FILED

APR 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF COLOMBIA

Vincent Simmons #85188
CAMP-C-JAG-I-R-11
LA. STATE PRISON
ANGOLIA, LA. 70712
                          Plaintiff

Docket No: _____
Filed _____

versus

George W. Bush Jr.
Kathleen B. Blanco
Louisiana Pardon Board
12th Judicial District Court
Third Circuit Court of Appeals
State of Louisiana
Louisiana Supreme Court
U.S. Western District Court
U.S. Fifth Circuit Court
                          Defendants

Case: 1:07-cv-00779
Assigned To : Kennedy, Henry H.
Assign. Date : 4/20/2007
Description: PRO SE GEN. CIVIL

## COMPLAINT

1. Previous Lawsuits:

   a. Have you begun other lawsuits in state or Federal Court dealing with the same Facts involved in this action or otherwise relating to your imprisonment? Yes ( ) No (✓)

RECEIVED

APR 3 0 2007
in. LC boy
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

II  Parties:

In item (A) below place your name in the First blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.

A.  Name of Plaintiff: _____
    address: _____

III.  In item (B) below place the Full name of the defendant in in the First blank, his official position in the second blank, and his place of employment in the third blank. Use item (C) for the names of, positions and place of employment of any additional defendants.

B.  Defendant. _George W. Bush Jr_____ is employed
    as _President_____ of _The United States of America_
    _____

C.  Additional Defendants: _See all Parties attached_____

IV.  State briefly exactly what you want the Court to do For you. Make no legal arguments, cite no cases or statutes.

See Memorandum Attached

# PARTIES

Vincent Simmons (plaintiff) is presently an African American prisoner at the Louisiana State Penitentiary and he is the complainant in this suit.

George W. Bush Jr. (defendant) is currently the president of the United States of America and he is being sued in his official capacity.

Kathleen Blanco is currently the Governor of the State of Louisiana and she is being sued in her offical capacity.

The Louisiana Pardon Board is an Administrative agency and it's current and active members are being sued in their official and individual capacity.

The 12th Judicial District Court is a judicial agency and its current members are being sued in their official capacity.

The Third Circuit Court of Appeals is a judicial agency and it's current and past members are being sued in their official capacity.

The State of Louisiana (defendant) is the State in which the plaintiff resides, and it is being sued in it's sovereign and official capacity.

The Louisiana Supreme Court is a judicial agency and it's current and past members are being sued in their official Capacity.

The U.S. Western District Court of Louisiana is a judicial agency and it's current and past members named herein are being sued in their official Capacity.

The U.S. Fifth Circuit Court of Appeals is a judicial agency and it's current and past members are being sued in their official Capacity.

The defendants in this Civil action were at all times acting within the scope of their official and employment when the acts and ommissions complained of herein below were Committed. Also the defendants herein are being sued in their individual capacity For monetary relief.

(2)

# JURISDICTION

This Honorable Court has jurisdiction pursuant to 42 U.S.C.A. § 1981; 42 U.S.C.A. § 1983 and 42. U.S.C.A § 1985. Furthermore, this Court has jurisdiction under the Declaratory and Injunctive Relief Act pursuant to 28 U.S.C.A. §§ 2201-2202. This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1331; 42 U.S.C.A. § 1343 (a)(1)(2) and (3); also 28 U.S.C.A. § 1346 (b)(2).

## Constitutional and Statutory Provisions

U.S.C.A. Amendment I.
U.S.C.A. Amendment V.
U.S.C.A. Amendment VIII.
U.S.C.A. Amendment IX.
U.S.C.A. Amendment XIII.
U.S.C.A. Amendment XIV.

## Constitutional Articles

U.S. Constitutional Article I s. 9 cl. 2.
U.S. Constitutional Article II s. 2 cl. 2.
U.S. Constitutional Article IV s. 2
U.S. Constitutional Article III s. 1

## Statute

28 U.S.C.A. §2254

## Other

Louisiana Post Conviction Act

(4)

## Statement of the Case

On May 23, 1977, petitioner was arrested by the Avoyells Police Department and charged with two (2) counts of aggravated rape in violation of La. R.S. 14:42. Which at the time in Louisiana carried a death Sentence.

However, on July 14, 1977 the prosecutor, Jeanette Theriot Knoll, Filed a Motion to Amend the indictment to two (2) counts of attempted aggravated rape in violation of La. R.S. 14:27 and 42. Plaintiff was never arraigned on these amended charges.

Petitioner was initially arraigned on June 16, 1977 and entered a plea of not guilty to the original charges of Aggravated Rape.

Plaintiff was represented by public defender Harold J. Brouillette who filed no pre-trial motions on Vincents behalf. Moreover, in less than two (2) months, trial began in the matter.

The jury trial was held on July 19 and 20, 1977- after which the jury returned a verdict of guilty of both Counts of attempted aggravated rape.

On July 28, 1977, Plaintiff was sentenced to 50 years on each count to run Consecutive.

(5)

On direct appeal to the Louisiana Supreme Court, appellate Counsel on behalf of Plaintiff only asserted two (2) arguments. That attempted forcible rape was a responsive verdict to the charge of aggravated rape and that the sentence imposed was invalid and unconstitutional. On April 10, 1978, the Louisiana Supreme Court affirmed Simmons Conviction and sentence, with opinion. State of Louisiana V. Vincent Simmons, 357 So.2d 517 (La. 1978).

Plaintiff asserts that he is not in possession of all the dates in which he filed for Post Conviction Relief. However, according to the Court reporter in 12th Judicial District Court, those files are stored in a warehouse in Ft. Worth, Texas.

Nevertheless, the matter involving this case relates back to June 3, 1991, when plaintiff filed for writ of Habeas Corpus to the Western District of Louisiana under Case No: 1:91-cu-01115. The state answered on October 7, 1991 to which Plaintiff filed a supplemental memorandum on October 15, 1991.

On September 9, 1992 Magistrate John Simon filed an order instructing plaintiff to respond why his writ should not be dismissed under rule 9 as an abuse of the writ. On November 16, 1992, Plaintiff Complied with order and filed his response.

There after, on January 19, 1993, Magistrate Simon issued a Report and Recommendation that plaintiff's habeas be denied and dismissed with prejudice. Plaintiff then filed objections on January 28, 1993

On February 12, 1993 District Court Judge F.A. Little issued a Judgment denying plaintiff's habeas and dismissing with prejudice. In response, plaintiff filed Notice of Appeal and Motion for Certificate of Probable Cause [sic] on March 15, 1993, which was granted by Judge Little on March 25, 1993.

On March 23, 1994, this Court affirmed the judgment of the district court. U.S. Fifth Circuit Record No. 93-4273.

On June 10, 1994, plaintiff again filed a petition for Habeas Corpus with Western District of Louisiana, under Case No. 1:94-cv-01064. On August 3, 1994, Magistrate Judge Robert Shemwell filed a report and Recommendations requiring plaintiff to provide proof that he had exhausted all state court remedies.

Petitioner then submitted objections on August 12, 1994. On May 8, 1995, Magistrate Simon again filed a Report and Recommendation suggesting that petitioner's habeas be dismissed as frivolous. The District Court Judge Little, filed a judgment on June 27, 1995 dismissing the habeas with prejudice.

On October 23, 1996, the Western District of Louisiana filed an Order denying plaintiff's pro-se Motion for Leave to file successive Habeas Corpus Petition, although the docket-master does not contain an original filing date.

WDLA Case No. 5:96-mc-00045. Again, under signed has recieved all documents in their possession and have found two

(2) documents relative to the 1996 case. Attached as Exhibit "B" is a handwritten pro-se filing to this Court entitled Motion and Memorandum for leave to Petition for Writ of Habeas Corpus. Attached as Exhibit "C" is a partial ruling from this Court dated October 11, 1996, and denying plaintiff.

Undersigned has been informed by the WDLA Clerk's Office that this was classified as a Miscellaneous case, and the records were destroyed after Five (5) years. Thus, after due dilligence, undersigned is unable to provide any additional documents in this case number. See Affidavit of Undersigned Counsel, attached herein as Exhibit "A".

Through undersigned counsel, on July 2, 2004 plaintiff filed an Application for Post Conviction Relief to the Twelfth Judicial District Court. The state responded thereafter.

That application was denied without hearing on August 24, 2004. Plaintiff thereafter filed a Motion for Reconsideration with the Twelfth Judicial District Court.

The State filed an objection to plaintiff's motion. The Motion to Reconsider was summarily denied. Plaintiff's thereafter filed a Notice of Intent to Seek Writs to the Louisiana Supreme Court, and timely filed a Writ of Review on March 14, 2005.

(8)

The Louisiana Supreme Court denied writs on June 24, 2005. Plaintiff thereafter filed a motion for Rehearing which was denied on January 27, 2006.

Plaintiff subsequently applied for Writ of Habeas Corpus on February 13, 2006, which Magistrate Judge James Kirk recommended be denied on April 21, 2006. Plaintiff timely submitted objections to Magistrate Report and Recommendations on May 1, 2006.

On May 18, 2006, the District Court ordered the Magistrate to file a supplemental Report and Recommendations, which was submitted by Magistrate Kirk on the same day. Plaintiff again timely submitted objections to supplemental Magistrate Report and Recommendation on May 30, 2006.

On June 16, 2006 the District Court dismissed Plaintiff's habeas without prejudice. Finding that Plaintiff must first seek permission from this Honorable Court to file a second and successive habeas petition.

On June 26, 2006 plaintiff's paid lawyer Laurie White filed with this Court, authorization to file a second or successive writ of Habeas Corpus. The Court ordered it amended July 26, 2006. On September 7, 2006, it was denied.

From that final denial the U.S. Fifth Circuit Court warned Plaintiff "that filing of **R**epititious or frivolous motions for

leave to file successive habeas applications will invite the imposition of sanctions.

For nearly 29 years plaintiff has been incarcerated for a crime he did not commit. And every time he enters the court on Post Conviction or Habeas Corpus to prove that the exculpatory evidence he has shows he's innocent, it is the courts who refuses to hear his case.

The reason for this continuous display of Judicial discr-imination derives from the State and federal courts ongoing conspiracy to protect a member of the Louisiana Supreme court. One, Mrs. Jeanett Theriot Knoll.

<u>Summary of Plaintiff's Criminal Case</u>

As previously discussed, plaintiff is a black man from Louisiana who in 1977 was arrested, charged and convicted of attempt aggravated rape of two (2) white Fourteen-year-old alleged victims. From his arrest to his conviction and sentence of 100 years at hard labor, no more than two (2) months elapsed.

According to the testimony of state's witnesses at trial, at about 9 p.m. on May 9, 1977, 18 year old Keith Laborde and his 14-year-old twin cousins Sharon and Karen Sanders stopped for gas at a 7-11 in Marksville, Louisiana. Keith testified that as he pulled his car into the stations parking lot, he noticed a

strange black man staring at him. Keith testified that he got out of the car and asked the stranger how he was doing. According to Keith, the man told Keith in an aggressive manner, that Keith had almost run him over as he was parking his car. Keith denied trying to run over the man and asked the stranger if he wanted to fight to which the stranger allegedly replied: "I don't fight, I shoot."

At trial, Keith testified that despite the potential altercation, Keith and the man shook hands and Keith agreed to give the stranger a ride. At trial, Keith testified that the black man allegedly identified himself by the name of "Simmons." Keith, Sharon and Karen all testified that Karen and Sharon climbed into the passenger seat beside Keith and the stranger got into the back seat of Keith's car.

Keith testified that the stranger proceeded to direct Keith to a remote location. At trial, Sharon testified that Keith and the girls began to get nervous when the stranger told Keith to turn down the remote Little California road. He ordered Keith to park and turn off the ignition. At trial, Keith alleged that the stranger flashed a handgun as he was ordering them about.

According to Keith's trial testimony, Keith eventually stopped the car, and the stranger was brandishing a gun. Then proceeded to take the keys and lock Keith in the trunk. Sharon testified that the stranger told the girls to undress. Karen testified

that she tried to run away and she, too, was locked in the trunk with her cousin. According to Sharon's trial testimony, the stranger proceeded to vaginally rape Sharon Sanders. She was then placed in the trunk with her sister and cousin while the stranger drove them to a second location.

According to Karen's trial testimony, at this point he got Karen out of the trunk and raped her anally and vaginally. Karen further testified that at the third stop, he anally raped Karen again and forced her to perform oral sex on him. Then the stranger allegedly popped one of the tires on the car with a tool from the trunk. According to Karen's testimony, he made Karen write their names down on a piece of paper, threating that he would come after them if they told anyone of the events of that evening. Finally, they dropped him off at a pay phone and drove home to thier grandparents house, where the three spent the night.

The girls did not tell anyone about the incident until almost two (2) weeks later on May 22, 1977, when Karen Sanders told her first cousin. The incident was reported to police on May 22, 1977, long after all valuable physical and DNA evidence had been lost. Vincent Simmons was arrested on May 23, 1977. No information was ever given at trial as to why plaintiff was immediately suspected and arrested. On May 23, 1977, after his arrest, Kieth, Karen and Sharon identified plaintiff from a physical line-up in which plaintiff was the sole participant to appear in hand cuffs, on May 23, 1977. Despite the girls description

(12)

of the perpetrator as a black man, the line-up also included at least one clearly Caucasian participant.

At his arraignment on June 16, 1977, plaintiff entered a plea of not guilty. The jury trial was held on July 19 and 20, 1977, after which the jury returned a verdict of guilty as charged to two (2) counts of La. R.S. 14: (27) 42, relative to attempted aggravated rape. On July 28, 1977, plaintiff was Sentenced to 50 years for each count, to run consecutive.

## Discovery of New Evidence

Before plaintiff was brought to a preliminary hearing, a month and a half after his arrest, a medical examination was performed on June 10, 1977 revealing that Sharon Sanders hymen was still perfectly intact. Also a medical examination was performed on Karen Sanders, but it was inconclusive as to whether actual penetration did occur. However, it was noted that she had contracted a venerial disease from an unknown source.

Somewhere before a preliminary hearing was held, the prosecutor Jeanette Knoll, learned of these reports. But tending to ignore their importance she kept them from defense counsel. At the preliminary hearing both Sharon and Karen Sanders testified that Simmons raped them.

(13)

During the course of a few weeks there after the prosecutor decided on her own to amend the indictment because she knew she could not prove those girls were actually raped, knowing very well that the medical reports would contradict them.

Oddly, on the day of trial, the clerk of court read the amended indictment to the jury; making it seem to them that the grand jury had originally charged Simmons with attempted aggravated rape.

Furthermore, after the indictment was read to the jury a bench conference was held in which the prosecutor and defense agreed to the amended charges without questioning the reasons behind the prosecutors intentions.

Yet, defense counsel knew all along that the prosecutor was amending the indictment based upon what was written in those medical reports. But instead of counsel moving to quash the indictment, he conspired or acquienced to the amendment without question.

Thereafter, the judge dismissed all of the subpoenaed police officers involved in the investigation of the case to keep them from testifying as to what those girls actually told them.

The prosecutor did not even want the medical examiner to

(14)

testify nor introduce those medical reports, because she knew that the defense counsel would use them to impeach the girls testimony.

Sadly enough, 21 years after Simmons was convicted and sentenced, his freedom supporters interviewed his defense attorney, Mr. Harold J. Brouilette. In a lettered statement by Mr. Brouilette, he admitted not knowing of the medical reports during or before trial. But instead learned of their existence 17 years later. Moreover, at the close of his letter he acknowledged the fact that Simmons was charged with attempted aggravated rape and not rape, yet noted that the reports showed no actual penetration ever occured or could have occurred on Sharon Sanders.

Nevertheless, his knowledge about the obvious contradictions in the reports compared to the preliminary hearing testimony of Sharon and her statement, to police, should have dawned on counsel at trial.

At Simmons' trial, both Karen and Sharon testified they were raped, they never said that Simmons tried to penetrate his penis into thier vaginas, which had they would have done so, the jury could have found elements of Attempted aggravated rape.

Yet, dispite whats obvious to the jury, judge, prosecutor, and the lawyer, Plaintiff was found guilty of both counts of

(15)

attempted aggravated rape, although the prosecutor intent-
ionally placed those two girls on the stand to tell the
jury a lie.... "That Simmons placed his penis in both of
their vaginas." Leaving the jury with no other choice but to find
him guilty.

 After his conviction and sentence, Simmons tried repeat-
edly to obtain the D.A. files for any exculpatory evidence
after he learned his lawyer never conducted no pre-trial
or post-trial discoveries.

 Nonetheless, his attempts were all in vain, he would
have to go through hell and high water to get those files.

 On December 7, 1993, some 17 years later and well
after Jeanette Theriot Knoll had climbed her way up
to the Louisiana Supreme Court as one of the justices,
Simmons was able to be provided a copy of the D.A.'s
files from 1977 through a Writ of Mandamus.

 For the first time he realized the prosecutor subborned
perjury at his trial by letting Sharon Sanders testify
she was raped repeatedly by Simmons.

 With the reports in hand to prove the prosecutor used
perjured testimony at his trial Simmons filed another post
conviction application based on this newly discovered
evidence of an exculpatory nature.

The March 28, 1994 application was denied by the trial Court and writ was denied by the Supreme Court of Louisiana on May 29, 1998 under caption State ex rel Vincent Simmons Vs. State of Louisiana, 98 CI 0042 (La. 5/29/98) 719 So. 2d 1277.

As a result of his efforts to prove his innocence under Brady v. Maryland, the district Court in 1994 denied the application with one word "denial" in just three (3) days after it's ~~inception~~ inception.

After extensive media coverage and the production of two (2) documentaries, plaintiffs supporters hired Louisiana attorney Laurie White to represent him on another round of post-conviction relief.

This application was filed July 7, 2004, and was subsequently denied October 21, 2004, with district judge Mark A. Jeansonne presiding.

* In the judge's ruling he acknowledged that he was "somewhat" delayed in retrieving and reviewing the record. Nevertheless he went on to address each claim briefly.

* In the process when he arrived at addressing Simmons newly discovered evidence claim he contended that the documents were not newly discovered, because Simmons approached the district Court with the documents in his prior

(17)

application for post conviction relief he filed on March 25, 1994.

In no way could judge Jeansonne believe that the law defines newly discovered evidence for purpose of meeting the applicable statutory time limitations under Post Conviction Relief to mean evidence presented in a prior application.

Judge Jeansonne knew that petitioner's for post conviction relief in Louisiana must be given a hearing on a "Brady" claim according to La. C.Cr.P. art. 930.8 (B).

\* Therefore, all judge Jeansonne's ruling and bogus findings served to do was ignore the fact that the documents were newly discovered and that they related back to the beginning of plaintiff trial in 1977 not his post conviction application in 1994.

As plain and obvious as it is/was that the judge intentionally and purposely refused to hear the case anew as required by law, the appellate court (Supreme Court) refused to correct this sham ordeal.

Likewise the U.S. Fifth Circuit Court of Appeals failed to do so, too, and at that warned Simmons that a sanction would follow if ever this matter is brought to them again.

Throughout the entire proceedings, the Louisiana Courts; the Pardon Board (who also reviewed the conviction with the new evidence) have persistantly and respectively tried everything in their power to sheild Supreme Court Justice Jeanette Theriot Knoll from embarrassment for illegally using perjured testimony to win a conviction on Simmons who is innocent.

The Courts know that there was a surprisingly outstanding public outcry behind the injustice meted to Simmons by a high elected public official. And they know they must cover up for Ms. Knoll regardless of the consequences, and in hopes that Simmons die in prison.

So far Simmons has spent over 29 years in prison on charges the prosecutor Jeanette Knoll knew she had no credible or valid evidence to prove the charges were committed.

And as it stands Simmons has no other alternative but to sue all the defendants named in this suit for their conspiratorial actions of concealing an injustice by refusing repeatedly to correct the injustice, and for violating the constitution and laws of this country in the process of doing so.

## Declaratory Relief

The defendants in this suit, while working under color of State and federal law, violated Simmons Constitutional rights when they conspired and discriminated to violate the Constitution, law and treaties of this country.

The defendants in this suit, while working under Color of State and federal law, intentionally violated the Constitution by refusing to correct a wrong they knew would have inflicted severe pain and hardship on plaintiff.

The defendants in this suit, while working under Color of State and federal law, violated Simmons Fifth Amendment right when they refused to afford him the equal protection of the law.

The defendants in this suit, while working under Color of State and federal law, violated Simmons Eight Amendment right when they subjected him to further Cruel and unusual punishment and thus left him to suffer continuously for the rest of his life for a crime they know was proven the prosecutor withheld material exculpatory evidence from his 1977 trial.

The defendants in this suit, while working under color of state and federal law, violated Simmons Ninth Amendment right when they willfully and consistently denied him the fair administration of the laws of this country as guaranteed to all citizens.

The defendants in this action, while working under color of state and federal law, violated Simmon's thirteenth Amendment right when they subjected him to slavery and involuntary servitude by deliberately allowing him to suffer the punishment of a unconstitutional conviction and sentence for charges the State of Louisiana illegally prosecuted him for.

The defendants in this case, while acting under color of state and federal law, violated Simmons Fourteenth Amendments right when they denied him the due process and equal protection of the law by depriving him of his liberty and refusing to correct a miscarriage of justice.

The defendants George Bush as president of the United States of America is responsible for the acts and inactions of the judges in the herein named federal courts through the law and treaties of this country confered in U.S. Const. Article II S2 cl2.

(21)

The defendant Kathleen Blanco, as governor of the state of Louisiana is responsible for the known acts and inactions of the judges and Board members in the herein named Courts for willfully and intentionally violating the laws of this state.

The defendants in this suit, while working under color of state and federal law, intentionally violated U.S. Const. Art. IV s.2 by conspiring and discriminating against Simmons by refusing to afford him privileges and immunities of the law when he was constantly denied Post Conviction and Habeas Corpus Relief, for which he clearly demonstrated his conviction and imprisonment was obtained illegally.

The defendants in this suit, while acting under color of state and federal law, intentionally violated U.S. Const. Article III s.1 when they performed their judicial duties in bad faith and caused a prisoner (Simmons) to suffer illegal punishment for nearly 30 years.

<u>Injunctive Relief</u>

Plaintiff prays that this Honorable Court will order the defendants to declare that his conviction is invalid and his sentence illegal.

Plaintiff prays that this Honorable Court will order the defendants to admit that they allowed an injustice to occur to deprive Simmons of his liberty.

Plaintiff prays that this Honorable Court will order the defendants to review and apply the proper evidentiary standard of Brady v. Maryland to his case.

Respectively submitted,
Vinceart Simmons #85188

#85188

Simmons, Vincent
Camp-C-Jaguar 1-R-11
Louisiana State Prison
Angola, La 70712

Thus signed and submitted this 11th day of Jan, 2007.

(23)

# MEMORANDUM

Plaintiff prays that after summary disposal of his declaratory and injunctive relief claims against defendants, that he be awarded $100,000,000.00 (dollars) in compensatory damages for emotional pain and suffering.

Signed this ___11th___ day of ___March___ 2007

s/ Vincent Zimmons #85188
(signature of plaintiff or plaintiffs)

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Executed on: ___11th March 07___

by: Vincent Simmons
Signature of movant

Instead, Sec. 1983 exists for the limited purpose of redressing violations of the constitutional and federal statutes.

Harvey v. Harvan, (C.A. 4 (VA.) 2002

24                                    ex parte Virginia

"Reader's View"

"friday, April 13, 07; The Advocate"

APR 20 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Crisis brewing in Justice system

07 0779

Once again, all eyes in Louisiana — and around the National — are on New Orleans. But this time the storm brewing is not the work of Mother Nature, but rather the state's three decades of negligence when it comes to its constitutional obligation to operate a fair and effective Justice system.

Judge Arthur Hunter has ordered the eventual release of 42 defendants facing felony charges because they have received little to no legal representation while awaiting trial. He also vowed to no longer allow the Orleans Parish public Defender office to represent defendants in his court.

No one is happy about Judge Hunter's ruling — Not the Judge, the defenders, the district Attorneys, or the residents of New Orleans.

The result is that in one week, the criminal Justice system is likely to come to a screeching halt in Orleans Parish.

cont
P. 2

— And That's The Last Thing The city
Needs as it continues The struggle
To rebuild And restore order After
The devastation of Katrina. No one
segment of The Justice system —
Judges, Prosecutors or defendants —
is To blame for The crisis. Real —
responsibility rest with The state
of Louisiana. The constitution is
clear: States are required To
Provide quality Legal counsel To —
Anyone facing Jail Time who cannot
Afford private counsel. There is
no exception for Louisiana, even
if our Lawmakers have been be-
having for years As if such An
exception exists.
Perhaps The most — frightening
component of All is That New
Orleans is not The only breaking
Point in Louisiana's Justice —
System. The crisis extends Across-
The State, from Orleans To cal-
casieu To "Avoyelles". Resources
for experts, investigations And
other crucial Parts of Preparing
A fair defense Are scarce in A
System That relies on fees from —

const
P.3

— Traffic Tickets rather Than
a steady and dedicated funding
stream. Louisiana defendants
wait months and even years before
Their cases are heard, often with
little access to an attorney.
These delays cost The state
a lot of money That could be
directed to other, more pressing
Needs.

The longer Trials are delayed
The harder it is To find The Truth.
Memories dim and evidence gets
lost. consequently, The broken
Justice system deprives All
Louisiana residents of confid-
ence That The right people are
Tried for The right crimes and
receive The right sentences.

To solve The Problem in New —
orleans, we need to fix The broken
criminal Justice system once
and for all across The state.
Anything less Than a statewide
solution is unacceptable because
The next crisis could be in shreve-
port, Lafayette or Baton Rouge.
Louisiana residents deserves better.
After 30 years of neglect, we

coast — we deserve a fair, efficient
P.H   And effective, Justice system
That "Protects us All".

BY: Heather Hall, Director
Louisiana Justice coalition
New Orleans.

"Justice for All"

Published Friday, 13, 07
The Advocate

57-779
HHK

JS-44
(Rev.1/05 DC)

## I. (a) PLAINTIFFS

*Vincent Simmons*

## DEFENDANTS

*George W. Bush, Jr., et al*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)

*Pro Se* (OR)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:07-cv-00779
Assigned To : Kennedy, Henry H.
Assign. Date : 4/20/2007
Description: PRO SE GEN. CIVIL

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

⦿ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP...

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other) OR** ⦿ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
⦿ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act



| □ G. *Habeas Corpus/* 2255 | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |

| □ K. *Labor/ERISA (non-employment)* | □ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (If not Voting Rights<br>Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-<br>Employment<br>□ 446 Americans w/Disabilities-<br>Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>□ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS  □ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint   **JURY DEMAND:** □ YES  ◉ NO

**VIII. RELATED CASE(S) IF ANY**  N.F.  (See instruction)   □ YES  ◉ NO   If yes, please complete related case form.

DATE 4.20.07   SIGNATURE OF ATTORNEY OF RECORD   NC3

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

forms\js-44.wpd