In The
United States District court
for The
District of columbia.

Vincent Simmons                    civil Action
#85188- Plaintiff                  # 1:07 cv-00779
versus
George W. Bush, et Al
        Defendants.

    Motion in opposition
To Dismissal of said Law-
Suit, Against The Defen-
dants.

    May it Please The Hon. court,
    Plaintiff Vincent Simmons
#85188, in Acccoding with f.R.
C.P. R. 4, commencement of Action,
etc, 3- W/Ail Service; And further
in Accordance Houston V. Lack,
487 u.s. At 268-69, 108 s.ct. At
2381-82, Wail box rule.
    Plaintiff, At Prisoner At
The Louisiana state penitentiary,

Court
P. 2

Whom have no other avenue or access to provide/serve the defendants, with his legal pleadings, law-suit, or his access to his constitutional rights to the courts, other then via the U.S. mailing system. Houston, supra.

Plaintiff further contends that according to the U.S. Supreme court, Chief Justice John Roberts, opinion, over turning some of the procedural obstacles in the 6th U.S. circuit court of appeals that led to dismissal of civil rights complaint brought by three Michigan inmates. The Chief Justice said a law-suit is not necessarily invalid just because a defendant was not named in the inmates earlier administrative grievance. The cases are Jones v. Bock, 05-7058, and Williams v. Overton, and Walton v. Bouchard 05-7142;

court
P-3

Plaintiff further contend
That According with the
Mail box rule, in Houston
V. Lack, supra, I have The
facing of my original
complaint mailed To the
United States District
court for the District of
columbia, received stamped
Jan 22 2007.

I further have An
order from Chief Judge
Hogan, C.J. TFM, dated 1/29/
07, directing me To complete
the In Forma Pauperis
Application That is enclosed.

I also have a Second
order, dated 4/12/07, by
The same Judge, where
The complaint had been
Amended To Show Vincent
Simmons V. George W.
Bush et Al. Instead
of Vincent Simmons V.
USA. That information
will be provided, As soon
As copies Are Made & There
The Lawsuit is Timely before
This Hon. Court.

Court
P. 4

Plaintiff that the Supreme
court's Justice O'connor
held in Tower v. Glover,
104 s.ct. 2820 (1984); (1)
the complaint adequately
alleged conduct "under
color of state law" in view
of the conspiracy allegation,
and (2) state public defend
ers are not immune from
liability under section 1983
for intentional misconduct
by virtue of alleged conspir-
atorial actions with state
officials which deprive
their clients of federal
rights.
1. where client alleged
that state public defenders
conspired with state officials
to deprive client of his
constitutional rights by secur-
ing his conviction, complaint
included adequate allegation
of conduct "under color of
state law. 42 U.S.C.A. Sec. 1983,

Cont
P.5.

According The court in U.S. V. Price, 86 S.ct. 1152, 383 U.S. 787 (U.S. Miss. 1966) The court Stated: I believe it is an incumbeant duty upon it, To go into the State To enforce The rights of The Citizens against All who Attempt To infringe upon Those rights when They Are recognized And secured by The Constitution of The country. If we do not possess That right The danger To The Liberty of The citizen is great indeed in many Parts of This union.

In cases, under Sec. 1983, under color of Law has consistently been Treated As The same Thing As The State Actions required under The fourteenth Amendment. Smith V. Allwright, 321 U.S. 649, 64 S.ct. 757, 88 L.Ed. 987;

court
P. 5

further, see Attached
89-Pages Pro-se Brief,
with Attached ex A, .
"conclusion"
That subsequently
their motion to dismiss
be denied. That this
matter proceed, in the
interest of Justice.

Respectfully
submitted by:/

Vincent Simmons
Pro-se, Doc # 85188
Camp-c-Jag-1-R-11
LA. State Prison
Angola, LA. 70712

Date
7/18/07

Court
P. 7

(certificate of service)

I Vincent Simmons #89188
pro-se, certify that a copy
of the foregoing motion,
Brief In opposition To
Defendants and memor-
andum of issues, ex a
with authority, have
been prepared, opposing
Their request for dis
missal. have been filed
with the u.s.d. ct, for the
District of Columbia,
in case, civil action
#1:07-cv-00779. Addressed
To clerk of court u.s.d. ct
333 Constitution Ave N.W.
Washington, D.C. 20001: A copy
To the Defendants Attorney
of Record charles c. foti, Jr.
Attorney General, State of
Louisiana; Patricia H. Wilton,
LA. Bar No. 18049; David G
Sanders (LA. Bar No. 1696;
Ass. Att-Gen. S Louisiana
Department of Justice;

court
P. 8

1885 North 3rd Street,
Baton Rouge, Louisiana 70804-9005; George W. Bush, Jr.
et al, President, White House
Geal. Del, Pennsylvania Ave
Washington D.C. 20530;
The U.S. Attorney Geal
Dept. Of Justice, 950
Pennsylvania Ave, N.W.
Washington, D.C. 20530.
In Accordiing with
The Mail box rule, issued
in Huston V. Lack, 487 u.s.
At 108 S.ct. 2381-82. By Mail
ing Same via u.s certified
return Mail, postage pre-
paid. At La. State Prison
Angola, LA. 70713; This
18th day of July 07.

Vincent Simmons
#85188-Camp-C-Jag
1-R-11, La. State Prison
7/8/07 Angola, LA. 70713

CC/
File
Rd

"Brief
On
opposition
To Defendant"

"Marbury v. Madison,
5 U.S. (1 Cranch) 137 (1803)
the Slaughter-House
Cases, 83 U.S. (16 Wall.) 36
(1873); Griffin v. Breckenridge
91 S.Ct. 1790, 403 U.S. 88
Zarcone v. Perry, 572 F.2d 52
State ex. Rel Medford v. Whitley
Bell v Bell, 460 F.3d 739

In The
United State District court
for The
Disistrict of columbia"

Vincent Simmons #85188
            Plaintiff;                    CASE #: 1:07cv-00779

versus
George W. Bush, et Al              filed Date
            Defendants

"Brief, In Defense
of The "constitution,"
Laws, And The Rights
of The People, guarant-
eed, by its spirit."

"Jurisdiction"
The "constitution," The Law of The
Land. Its "Authority, vests This
Honorable court, with The "power",
To check + Blance, And "Enforce" The
Laws, when They Are contrary,
Applied To its citizens."

Respectfully submitted,
By; s/ Vincent Simmons

"Constitutional And Statutory Provisions"

Jurisdiction, The "Constitution" The "Law — of The "Land, supreme".

U.S.C.A. Amendment I.

U.S.C.A. Amendment V.

U.S.C.A. Amendment VIII.

U.S.C.A. Amendment IX.

U.S.C.A. Amendment XIII.

U.S.C.A. Amendment XIV.

## Constitutional Articles

U.S. constitutional Article I s. 9 cl. 2.

U.S. constitutional Article II s. 2 cl. 2

U.S. constitutional Article IV s. 2.

U.S. constitutional Article III s. 1.

## Statute

28 U.S.C.A. s. 2254;

## Other

2. C. Cr. P. Art. 930.8 (A) And (B)

Sec. 1983;

Title 42. U.S.C. Sec. 14141

Title 18 U.S.C. Sec. 242

A.B.A. General Standards.

cont   f. 129-130 (1984) — sep-of power—76-colum-L-
Rev. 371, 374 (1976).  Art. II, Art-III;
J. W. O. Dy, 116-cong. Rec. H. 3113-3114;
6 A.M.L. Reg. (N.D) 257, 264 (1964); R.B.,
Imp. 62-63, 67, 90 (1973);
Jackson V. Metropolitand Edison Co, 419 u.s. 345 (1974);
109 s.ct. 998 (1989); 1989 sup.ct. Rev. 53, 59;
ex parte Virginia, 100 u.s. 339 (1880); screw v.
united states, 325 u.s. 91 (1945); west V. Atkins,
487 u.s. 42 (1988) Brady V. Maryland, 373 u.s. 83,
83 s.ct. 1194, 10 L.ed.2d 215 (1963); Kyle V. Witney,
Mooney V. Hollohan, House V. Bell; united states v.
Guest, 383 u.s. 745 (1966); Sleavinger V. Saxner,
106 s.ct. 496, (1985); Briscoe V. Lahue, 460 u.s.,
At 342, 103 s.ct. 119; Butz V. Economou, 438
u.s. At 511, 98 s.ct., At 2913; 438 u.s. At
512, 98 s.ct., At 2913; 47 Calif. L.Rev. 30,
339 (1959); Morrissey V. Brewer, 408 L.ed.2d
484 (1972); Sellars V. Procunier, 641 f.2d,
At 1302, N. 15; Bricker V. Mich. Par. Bord, 405
f. Supp. 1340, 1345 (E.D. Mich. 1975); u.s. const,
Art IV. Sec. 2; Nix V. Whiteside, 106 s.ct. 988
(1986); In re Michael, 326 u.s. 224, 227,
66. s.ct. 78, 79, 90 L.E. 30 (1945);
united state V. Agurs, 427 u.s. 97, 103, 96 s.ct.
2392, 2397, 49 L.ed.2d 342 (1976);
state V woodcock, 463 so.2d 774; (La. App. 4th cir. 1985)
Jones V. Bock, 05-7058; Walton V. Bouchard, 05-7142 - s.ct. Jaal
22nd, 2007

court

NAPue V. Illinois, 360 U.S. 264, 269, 79
S.ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959);
Mooney V. Holohan, 294 U.S. 101, 112 (1935);
State V. DeRuise, 802 So. 2d 1224 (LA. 2001);
Malley V. Briggs, 106 S.ct. 1092 (1986);
Imbler V. Pachtman, 424, U.S. 409, 418,
96 S.ct. 984, 989, 47 L. Ed. 2d 128 (1976);
Tower V. Glover, 467 U.S. 914, 104 S.ct.
2820, 81 L.Ed. 2d 758 (1984); civ. Right
Act. 1871, 1983, Id. At, 920, 104, S.ct.,
At 2825; Harlow V Supra, 457 U.S. At
807, 102 S.ct. At 2732; L.c. cr.P. Art.
487; State V. Moliere, 2006 WL-1382, 204 (LA.
APP. 4th cir. 5/5/06.); State V. Wheeler,
665, So. 2d 1286, (LA. APP. 4th cir. 12/14/95);
State V. Johnson, 637, So. 2d 1033 (LA. 1994);
Sec. 1983; exist for The limited purposes
of redressing violations of The constitution
and federal statutes.
   Harvey V. Horan, C.A. 4 (VA.) 2002
Swekel V. city of River-Rouge, 119 F.3.d
1259, 1262 (6th cir. 1997)
Bell V. city of Milwaukee, 746 F.2d
1205, 1261 (7th cir. 1984).
See, "The Slaughter-House, 83 U.S. (16 Wall)
36 (1873) ex Parte Yarbrough, 110 U.S. 651 (1884);
and ex Parte Siebold, 100 U.S. 371 (1879).
Serio V. State Bd of Pardons, 821 F.2d 1112 (5th cir. 1987);
Johnson V. Pfeiffer, F.2d 1120 (5th cir. 1987

Court

Constitutional Authority
Goss V. Lopez, 419 U.S. 565 (1975);
Logan V. Zimmerman Brush Co., 455 U.S.
422 (1982); Injunction as prior Restraint; see Fiss, The civil Rights
Injunction, 70-74 (1978); see,
Barnett, The Puzzle of prior —
Restraint, 29 Stan. L. Rev. 539,
551, 552 (1977); see, Sylvania V.
consumers Union, 445 U.S. 375,
386 (1980); National socialist —
Party V. Skokie, 432 U.S. 43 (1977);
Also see, In Pittsburg Press Co. V.
Pittsburg commission on Human —
Relations, 413 U.S. 376 (1973); see,
United States V. Grace, 461 U.S. 171-
(1983); see, Police Dept. of Chicago, V.
Mosley, 408 U.S. 92 (1972); see,
McAuliffe V. Mayor, of New Bedford,
155, Mass. 216, 29 N.E. 517 (1892); see also,
Perry V. Sinder Manual, 408 U.S. 593,
597 (1972); see Shelley V. Kraemer,
334 U.S. 1, (1948); see, Evans V. Newton,
382, U.S. 296 (1966); Also see, Burton V.
Wilmington Parking Authority, 365,
U.S. 715 (1961); see, Rendell-Baker V.
Kohn, 457 U.S. 830 (1982); Nixon V.
Herndon, 373. U.S. 536 (1927); State ex.
Rel Medford V. Whitley; Bell V. Bell 460 F. 3d 739

(1) The rule of law - The separation of of powers, ensures that the power to make the law is not in the hands of those who execute it. Lawmakers cannot enact oppressive laws knowing that they will be exempt from their operation. Under this view, the central safeguard of the separation of powers is that it:

Makes the laws apply to the lawmakers. This is probably the meaning of "Montes-quieu's" statement, concerning Tyrannical-Laws - Tyrannically Applied; if the Legis-lators cannot ensure a Tyrannical execution, i.e., one which favors themselves, they will be less likely to make Tyrannical laws for fear that they themselves will be Tyran-nically ruled by them. (I)f a separate-executive will enforce the law - even against the lawmakers, the lawmakers will not have a "distinct interest from the - rest of the community". Epstein, The Political Theory of the federalist - 129-130 (1984).

cout
P.2-

(2) Rulers v. ruled. One of The principal concerns of The framers involved The need To ensure That Government officials would act not in their own interests but in The interest of The public. If Power were concentrated in one branch, There would be an increased risk That, That branch would act To increase its own Power, The Power of Government at The expense of The governed.

The Separation of Powers was intended To act as a partial remedy, Thus safeguarding both Liberty And private property against Governmental action. If one branch Tried To use its power in an oppressive manner, "Ambition would counter act ambition," The federalist No. 51, And another branch would provide resistance.

In This respect, The Separation of Powers "was based upon The skeptical idea That only The division of power among Three Governmental

cont.
p. 3.

— institutions executive, Legislative, and Judicial could counter act The inevitable Tendency of concentrated Powers To overreach and Threaten Liberty." Levi, some Aspects of The separation of Powers, 76-colum. L. Rev. 371, 374 (1976).

(3) limited government — A different — rationale for The constitutional — distribution of Powers stresses — The goal, important To some of The framers, of limited Government.

Under That distribution, No law can be brought To bear against The citizenry without A broad consensus. The executive and Judiciary must concur with The Legislature in order for A law To be enforced. This system Tends To make it difficult — for government To Act unless There is some Thing Like A con-sensus, That it ought To do so. In This respect, There is an — intimate connection between —

cont
P. 4.

— The separation of powers and
The protection of private ordering.
Note also, the connection between
The distribution of "National powers"
And The desire To Limit The power
of democratic policies To Alter
The status quo. In particular,
The system of "Checks and balances"
ensures That it will be difficult
To obtain substantial reforms.

    compare in This regard The respect-
ive views of "Madison and Jefferson
About stability and Turbulence—,
Chapter 1, section A, supra.
    (4) "The problem of factions"
The separation of powers was also
a partial solution To The problem
posed by factions, The risk That
Governmental power will be usur-
ped, by private groups seeking
To obtain distribution of wealth
or opportunities in Their favor.
    Such private groups, whether
Minorities or (as was more likely)
Majorities, might use The authority—

cont
P. 5.

of government to oppress others.
see, The federalist No. 10, chapter -
1 supra. The distribution of nation-
al powers was intended to reduce
That risk. A faction may be able
To acquire power over one of The
branches; but it was unlikely
That it could do so over all Three.
(Has This proved to be true?) In
This respect, a goal of the separat-
ion of power was to protect -
Minorities against Tyranny.

Consider also The federalist -
No. 70, defending The constitution's
expansion of The power of The
executive on The ground That
such power "is essential To The
protection of The community
against foreign attacks; it is not
less-essential To The steady
administration of The Laws; To
The protection of property against
Those irregular and highhanded -
combinations which some Times-
interrupt The ordinary course

CONT
P. 6.

~ of Justice; To The security of
Liberty against The enterprise
And Assaults of Ambition, of faction,
And of Anarchy.

Preventing Tyranny. The Federalist
No. 47, Stresses a different Justification
for Separating governmental powers:

"The Accumulation of All powers,
Legislative, executive, And Judiciary,
in The same hands, whether of one,
A few, or many, And whether hereditary,
self Appointed, or elective, may Justly
be pronounced The very definition
of Tyranny. see, Myers v. united-
states, 272 U.S. 52, 293 (1926) (Brandeis-
J., dissenting.

Plaintiff contends, he is and has
been The victim of such illegal
practices, by each of The named
defendants in his suit, when
They conspired To intentionally
violate The constitional and The
Laws deriving Therefrom, which
is prohibited by The following sworn
oath, To wit:

court
p. 7.

— "I do solemnly swear That I will administer Justice without respect To persons, and do equal right To The poor and To The Rich; and That I will faithfully and impartially discharge all The duties incumbent on me as, according To The best of my abilities and understanding, agreeably To The constitution and laws of The united states!"

George W. Bush, (defendants) is currently The president of The united states of America, and he is sued in his official capacity, for his failure To Thoroughly and adequately perform his duties as follows after being placed on notice, of said violations of The constitution, and To enforce same To wit:

2- presidential power and Domestic affairs; Note: "Impoundment, law enforcement, and The "Take-care clause". (The constitutional—

cont
P. 8.

— provides That The President "shall" Take care That The Laws be faithfully executed. An appropriations act constitutes A Law which The president must faithfully execute. (The) constitution does not require The President To be a mere clerk, and his power To execute The Laws must necessarily involve some discretion. However, To imply from This discretion a power so great as impoundment is To have The exception swallow The rule — and To ignore The basic Tenor of The constitution. (Youngstown); repudiates The concept of inherent executive power. Although some of The opinions in The youngstown case suggest That The president has inherent power To cope with an inflationary economy does not meet The requisite standard of crisis. see united states V. Nixon, 418 u.s. 683 (1974). On march 1, 1974, a grand-Jury of The united states District for The District of columbia, returned—

court
p.9.

— An Indictment charging several named individuals with various offenses, including conspiracy to defraud the united states and to obstruct Justice. Although he was not designated as such in the Indictment, the grand Jury named the president, among others, as an unindicted co conspirator.

Many decisions of this, however, have unequivocally reaffirmed the holding of (Marbury that) "(i)t is emphatically the province and duty of the Judicial department to say what the law is."

Since this court has consistently exercised the power to construe and delineat claims arising under express powers, it must follow that the court has authority to interpret claims with respect to powers alleged to derive from enumerated powers. our system of government "requires that federal courts on occasion interpret the constitution in a manner at variance with the —

court
P. 10.

- construction given The document
by another branch." (Notwithstanding)
The deference each branch must accord
The other, The " Judicial Power of
The united States" vested in The
federal courts (can) no more be
shared with The executive Branch
Than The chief executive, for
example, can share with The
Judiciary The veto Power. (Any)
other conclusion would be contrary
To The basic concept of separation
of Powers And The checks and—
balances That flow from The scheme—
of A Tripartite government.
  (we) Therefore reaffirm That
it is The Province And duty of
This court " To say what The Law—
is!! with respect To claims of
Privilege Presented in This case.
  Any Privilege can be said To
derive from The supremacy of
each Branch within its own
assigned Area of constitutional duties.

cont
p. 11.

— certain powers and privileges flow
from the nature of enumerated powers;
The protection of the confidentiality
of presidential communications has
similar constitutional underpinnings,
However, neither the doctrine of
separation of powers, nor the
need for confidentiality of high-
level communications, without more,
can sustain an absolute, unqualif-
ied presidential privilege of —
immunity from judicial process
under all circumstances. The —
president's need for complete
candor and objectivity from advisers
calls for great deferences from
the courts. However, when the
privilege depends solely on the broad,
undifferentiated claim of public
interest in the confidentiality of
such conversations, a confrontation
with other values arises.
'Absent a claim of need to protect
military, diplomatic, or sensitive
national security secrets, we find—

court
P. 12.

— it difficult To Accept Any other Arguments That reveal The very important interest in confidentiality of pridential communications is significantly diminished by Production of such material for in camera inspection with All The Protection That A district court would be obligated To Provide.

The impendiment That An Absolute, unqualified Privilege would Place in The way of The Primary constitutional duty of The Judicial Branch To do Justice in criminal prosecutions would Plainly conflict with The functions of The courts under Art. III. In designing The structure of our government And dividing And Allocating The Sovereign Power Among Three co-equal — Branches, The framers of The constitution sought To Provide A comprehensive system, but The separate Powers were not intended To operate with Absolute independen —

cont
p. 13.

—dence. (To) Lead The Art. II
Powers of The President As Providing
An Absolute Privilege As Against
A subpoena essential To enforce—
ment of criminal statutes on
No more Than a generalize claim
of The Public interest iN confiden-
tiality of non military and non—
diplomatic discussions would upset
The constitutional balance of
" A Workable government" And
gravely impair The role of The
courts under Art. III.

we conclude That when The
ground for asserting Privilege as
To Subpoenaed materials
Sought for use in A criminal
Trial is based only on The
generalized interest in con—
fidentiality, it cannot Prevail
over The fundamental demands
of due Process of Law in The
fair Administration of criminal—
Justice.

court
P. 14.

— The President, selects and recommends
Appointment of federal Judges To
The Judical Branch for Life. He
have a constitutional duty, To create
a checks and balance committee,
oversee, That his duties ▮▮▮▮
under The Take care clause,
And his sworn oath, To faithfully
execute The Laws and uphold
The constitution, And To protect
The people in our country.
      Note:
            "Impeachment"
The "constitution" Provides The ultimate
weapon against presidential misconduct
in The form of The impeachment-Remedy.
The House of Representatives may
impeach The President, And remove
him from office, for "Treason, Bribery,
or other high crimes and misdemeanors"
   U.S. Const - Art. II, sec. 4.
The impeachment mechanism has
been invoked quite rarely in The
Nation's history - Andrew Johnson
is Alone Among Presidents in having-

cont.
p. **15.**

— been impeached; he escaped conviction by a single vote. The House has voted to impeach a number of federal Judges and The senate █ has voted to convict in a handful of cases. Issues associated with The impeachment mechanism received widespread attention during The watergate affair. The article of impeachment adopted by The House Judiciary committee, which never reached The full House because of President Nixon's resignation, are outlined below.

In part because of The sparse history, There is no clear answer to The central question: what is The meaning of The Phrase "high crimes and misdemeanors"? may The president be impeached for activities That are not criminal offenses? consider The following Views.

Remarks of congressman Gerald — ford, Proposing The impeachment of Justice william O. Douglas, 116 cong. Rec. H 3113-3114 (daily ed. April 15, 1970).



Court
P. 16.

## 2. CRIMES:

The decided weight of Authority is,
That No impeachment will lie except for
A true crime (or) A breach of The common
or statute law, which (would) be The
subject of indictment.

Theodore Dwight, Trial by impeachment,
6 Am. L. Reg. (N.D.) 257, 264 (1964).

## 3. Words of Art:

"High crimes and misdemeanors" Appear
To be words of Art confined To impeach-
ment, without roots in The ordinary
criminal law And which, so far as I
could discover, had no relation To
whether An indictment would lie
in The Particular circumstances.
(Charges) drawn from impeachment
cases disclose That impeachment
conduct was Patently Not "criminal"
in The ordinary sense. (But The
framer's intention was) To Preclude
resort To impeachment of The
President for Pretty misconduct.

Cont — R. Berger, Impeachment 62-63,
p. 17  67, 90 (1973).

Which interpretation best accords with The text of The clause. Article 1 of The Article of impeachment asserted That President Nixion had obstructed The administration of Justice by delaying And impediing The investigation into The unlawful entry into The headquarters of The Democratic National committee.

Article II claimed That President Nixion had engaged in conduct — violating The constitutional rights of citizens And impairing The Administration of Justice. It is The "counts duty To Apply The Appropriate Laws, And Justice, Mandated by The constitution." The (defendant) George W. Bush, had a responsibility, " he shall Take care That The Laws be faithfully — executed That Authority must be Matched Against words of The fifth Amendment —

court
P. 18.

— That "No Person" shall "be deprived —
of life, liberty or property, without
due process of law ---" one gives —
A governmental authority That —
reaches so far as There is law,
The other gives a private right
That authority "shall" go no further.

These signify about all There is —
of The principle That ours is a
government of laws, not of men,
and That we submit ourselves To
rules only if under rules.

Vincent Simmons (plaintiff) is
at all Times mentioned, an African-
American-prisoner at The Louisiana
State Penitentiary, against his
will; and he is The victim of a Tyrant
illegal conspiratorial group of private
individuals, cloaked with The authority
of The State and federal govern—
ment, who have subjected him To —
discrimination, Racism, servitude,
etc, etc, in violation of Their —
"oaths" and The "constitution".

cont
P. 19.

— George W. Bush, (Defendant) is currently The President of The United States of America, and he is being sued in his official capacity, for his conspiratorial Tyrant, illegal practices, after being placed on Notice, and failed To act To protect The Plaintiff's constitutional Rights; his conduct violated The constitution, and The Laws — deriving There from, while cloaked — with The Authority as commander — in chief; in violation of his "oath".

Kathleen Blanco, (Defendant) is currently The Governor, of The state of Louisiana, is being sued in her official capacity, for her conspiratorial — Tyrant, illegal practices, after being placed on Notice, and failed To act To protect The Plaintiffs — constitutional rights; her conduct violated The constitution, and The Laws deriving There from, while cloaked with The Authority as Governor; in violation of her "oath".

Court
P. 20-

— The State of Louisiana, (Defendants), is The state in which Plaintiff, resides, and it is being sued in it's sovereign, and official capacity, for allowing The conspiratorial Tyrant, illegal practices of discrimination, racism and servitude, after being placed on notice, repeatedly, and failed to act, to protect The constitutional Rights of plaintiff; Their conduct violates The "constitution", and laws deriving There from, while cloaked with The Sovereign authority of a state in violation of it's "oath".

The Louisiana State Supreme court, (defendant), is a Judicial Agency, and its current and past members are being sued in Their official capacity, for Their conspiratorial Tyrant, illegal practices of discrimination, racism, and servitude, after being placed on notice, repeatedly, And failed to act, to protect The constitutional Rights of plaintiff; Their conduct violates The "constitution", and laws deriving There from, while cloaked with The authority of The state; in violation of Their "oath".

court
P. 21-

The 12th Judicial District court, (defendants), is a Judicial Agency, and it's current and past members are being sued in their official capacity, for their conspiratorial Tyrant, illegal practices of discrimination, Racism and servitute, after being placed on Notice, repeatedly, and failed to act, to protect the "constitutional Rights of plaintiff; their conduct violated the "constitution," and "Laws deriving Therefrom, While cloaked with the authority of the state; in violation of their "oath".

The Third circuit court (defendants), is a Judicial Agency, and it's current and past members are being sued in their official capacity, for conspiratorial Tyrant, illegal — practices of discrimination, Racism and servitude, after being placed on notice, repeatedly, and failed to act, to protect the constitutional Rights of plaintiff; Their conduct violated the "constitution," and laws deriving Therefrom, while cloaked with the authority of the state; in violation of their "oath".

Cont
P. 22 —

The U.S. Western District court of Louisiana, (defendants), is a Judicial agency, and it's current and past members are being sued in their official capacity, for their conspiratorial Tyrant, illegal practices of discrimination, Racism, and servitute, after being placed on notice, repeatedly, and failed to act, to protect the constitutional Rights of Plaintiff; Their conduct violated the "constitution", and laws deriving — therefrom, while cloaked with the Authority of the "constitution", in violation of their "oath".

The U.S. fifth circuit court of appeals, (defendants), is a Judicial agency, and it current and past members are being sued in their official capacity, for their conspiratorial Tyrant, illegal practices of discrimination, Racism, and servitute, after being placed on notice, repeatedly, and failed to act, to protect the constitutional Rights of Plaintiff; Their conduct violated the "constitution," and laws deriving therefrom, while cloaked with the Authority of the "constitution", in violation of their "oath".

Cont
P. 23.

The Louisiana Parole and Pardon Board,
(defendants) is An Administrative
Agency, it's current And Past members.
Are being Suied in Their official capacity,
for Their conspiriturial Tyrant, illegal
practices of discrimination, Racism,
And Servitude, After being placed
on Notice, repeatedly, And failed To
Act, To protect The "constitutional
Rights of plaintiff; Their conduct violated
The "constitution" And laws deriving
There from, while cloaked with
The State Authority, in violation
of Their "oath"

    Each of The defendants, in
This Law suit, were At All Times Acting
within The scope of Their official
And employment, And cloaked with
The Authority of The State and
federal Government - Their rep-
eated Tyrant, illegal practices,
Acts and ommissions, violated Their
"Sworn oath" They even Threatened
Plaintiff, his hired Attorney, And Any
other Attorneys who Attempted To
Assist Plaintiff, Pursue his constitutional
Rights, would be Punished -

court
p. 24.

— 1. "State Action and federalism" The modern court has held That State Action is a prerequisite to The assertion of rights contained in both The first Eighth Amendments (originally Applicable only to The federal government). And in The fourteenth Amendment (applicable To The states). But historically, The requirement Attracted little Attention until passage of The reconstruction — Amendments After The civil war. After The Enactment of These Amendments, The court was required To determine The extent To which They changed The Traditional balance between State And federal Authority. one View was That The new Amendments gave The federal Government plenary authority To protect individual Rights. A second View was That The Amendments left untouched The States Traditional functions and Authorized federal intervention only when The State "defaulted"

cont
p. 25

— ial Their "primary obligation".
See chapter 5, sec. A.2, supra.

Not suprisingly, then, the court's
earlies state action decision
looked to principles of federalism
to give content to the doctrine.

Pure Inaction and the theory
of governmental neutrality.

In Jackson v. Metropolitand
Edison Co., 419 U.S. 345 (1974),
Justice Rehnquist, writing for
the court, summarized state
action jurisprudence as follows:

While the principle that private
action is immune from the restrictions
of the fourteenth amendment is
well established and easily stated,
the question whether particular
conduct is "private" on the one
hand, or "state action" on the
other, frequently admits of no
easy answer -- (the) inquiry must
be whether there is a sufficiently
close nexus between the state
and the challenged action of
the regulated entity so that the —

court
P. 26

—Action of The latter may be fairly treated as that of the state — itself. The true nature of the state's involvement may not be immediately obvious, and detailed inquiry may be required in order to determine whether the test is met. Typically, the court has organized this "detailed inquiry" under two rubrics. Sometimes the court finds a sufficiently close nexus when the state function to a private entity. On other occasions the nexus is provided when the state becomes entangled with a private entity or when it approves, encourages, or facilitates private conduct. The reach of each of these two strands of state action doctrine and the way in which they interrelate is explored below. Note, however, that the nexus inquiry is relevant only if one is attempting to make the state responsible for what is otherwise private conduct.

Con't
P. 27.

— when The state itself is acting —
when, in other words, The state's
involvement is immediately obvious."
No further inquiry is necessary.

It should be readily apparent,
however, That this formulation
involves something of an oversimplific-
ation. In virtually every "state —
action" case, it is possible To find some —
"immediately obvious" conduct of the
state that contributes in some way To
The alleged constitutional violation.

For example, state officials stand
ready To enforce background Tort —
and criminal rules that inevitably will
favor one party to a dispute rather
Than The other. If This state involve-
ment "counted" As state action, The
state would always be responsible
for private conduct. Consequently,
before exploring ways in which
private conduct is attributed To
The state, it is necessary To ex-
plore in more detail The concept
of state in Action. see DeShaney v. —

court
p. 28.
— Winnebago County Department of
social service, 109 s. ct. 998 (1989).
Also consider Strauss, Due process,
Government inaction, and private
wrongs, 1989 sup. ct. Rev. 53, 59:

"suppose a plaintiff seeking,
say, to enjoin a Tress pass by
a private party, loses his or her
case because The Judge is biased.
( suppose The Judge has a financial
interest Aligned with The defendant.)
That is a clean violation of The
due Process clause. The right
To Trial before an impartial Judge.

compare Randell-Baker with ex Parte —
Virginia, 100 u.s. 339 (1880); where a
State Judge, discriminated against Blacks
in The selection of Juries, in violation
of State Law. The court reJected The
defendant's argument That he was
Not a State Actor, because The
State had prohibited The conduct
in question. "(As) he Acts in
The name and for The State, and
is clothed with The State's power,

cont,
P. 29.

— his Acts, is That of The State. This
must be so, or The constitutional —
Prohibition has no meaning." See
Also, Screwy V. United States, 325,
U.S 91 (1945) (State police officer
who exceeds his Authority under
State Law is none Less A state
Actor, Acting under color of State.
   Is The Readell-Baker "coercion
or significant encouragement" Test
consistent with ex parte Virginia
And Screwy? If A Judge or Police
officer who Acts in The Teeth of
State Statute is nonetheless
Acting for The state, why isn't
A School official who conduct
is permitted by State Law Also
A State Actor?
   Compare Readell-Baker, To Westv.
Atkins, 487 U.S. 42 (1988), where
The court held That A Private
Physician, under contract with
The State To Provide medical
Service for inmates At A State-
Prison, WAS A State Actor for—

cont
P. 30.

— constitutional purposes. Writing
for the eight justices, justice
Blackmun rejected the argument
that the doctor's actions were
not attributable to the state be-
cause he was exercising indep-
endent medical judgment.

The defendants, named in this
lawsuit, have executed every
thinkable methods, in their repeated
acts and practices, to conceal the
criminal wrongdoings of their
sister D.A, judge and justice
Janet Tikaoll, in violation of their
oath of office, and the constitution.

The Legislatures of the state
of Louisiana, enacted a statute,
and the Governor sign it into
law, is as follows to wit:

LA. C. cr. P. Art. 930. 8 (B);
which specifically states;

B. If an application for post-conviction-
relief, which is ▬▬▬ Timely
filed, or which is allowed under an
exception to the time limitation-

Cont. P. 31

As set forth in Paragraph (A) of This Article, "shall" be dismissed upon showing by State of Prejudiced To it's Ability To respond, negate, or rebut The allegation of The Petition caused by events not "under The control of The State" which have Transpired Since The date of (original conviction) if The court finds, "after a hearing" Limited To That issue, That The States Ability To respond To, negate or rebut Such Allegations has been materially Prejudiced Thereby."

Plaintiff Avers That The Provisions of Art's 930.8 (A) (i) And (B), is unconstitutionally Vague, overbroad, And Allows Judges To Abuse Their discretion And Violates prisoners constitutional rights.

Plaintiff contends That The Above Statutes, Allows The Judges To Violate The Brady Doctrine, And due Process of Law And The equal Protection Clause of The first 8th Amends.

COUNT
P.32.

See — Townsend V. Sain, 83 s.ct.
745; Mandates that Plaintiff is
entitled to a hearing. Brady,
supra. Plaintiff contends that
after diligent effort, via a
civil Proceeding, the state Actors
was ordered to show cause, why
Plaintiff was not entitled to
exculpatory Brady evidence
concealed from his Jury Trial.

The State Actors admits provid-
ing Plaintiff with said newly
discovered evidence, Dec 4th,
1994; not 1977, during before
nor after his Trial. But 17yrs
later — This evidence was under
The control of The State.
State V. Issac Knapper, (No. 90-KP-1435);
579 So.2d 956; 1991 La. Lexis 1263; State
ex rel Larry Walker V. State of La,
(No. 2004-KH-0714; State V. Cleyane
W. Landiecy (No. 2003-KP-1640) oct
1, 2004;

Cont
P.32

State ex rel. Gregory Comier V. State of LA, (No. 95-KH-2208), S. ct. of LA, 95-221168, 1996-LA. Lexis 2608, Oct. 4, 1996; Generally, Callia V. Caial, 97-2390 (LA-3/13/98); 706 So. 2d 968; Brady V. Maryland, 373 U.S. 83, 83 S. ct. 1194, 10 L. Ed. 2d 215 (1963); Kyles V. Whitley, 514 U.S. 419, 437, 115 S. ct. 1555, 131 L. Ed. 2d 490. See, Also, U.S. S. ct. ial House V. Bell, (No. 04-8990), decided June 12, 2006. Each defendants, had a constitutional Obligation See Townsend V. Saial, 372 U.S. 293, 83 S. ct. 745).

Plaintiff, further contends That each of The defendants have intentionally And repeatedly, denied him, his constitutional rights, To An "evidentiary hearing", To develope The material facts; And To further determine whether plaintiff meets The "exceptions", To the Time limitations.

Plaintiff, further contends That The (defendants) despite constitutional Law, That directs Their responsibilities, They have intentionally, conspired To Violate The "constitutional" And The Laws of The united States And Their "sworn Oath".

Court
P. 33

Plaintiff, further contends That The herein Names (defendants), intentionally conspired, when They initially, hid said Brady exonerating evidence, from The Plaintiff's Trial Jury, The defense, And The court. They were state-Actors, And They Later incorporated federal Actors, in concert with Their initial Purpose, To conceal The medical findings, The police department's illegal Arrest, Their investigative findings, And initial reporting of The Alleged Rapes, The illegal Ident-ification procedures, The police supp-lemental reports; The initial state-ments of The victims; The illegal-Shooting of Plaintiff, while in-Police custody; And The fact-That The Alleged victim And witness, "Never Told The police That Their "Rapist" Told Them His Name was "Simmons, The night of The Alleged Rapes, As Testified To At Trial under Oath". All This was done in viola-tion of The constitution.

CONT
P. 3b.

The defendants conduct is criminal, And intentional, And They have individually And collectivelly, conspired To hide Their criminal conducts, for The PAST (30) yrs! from The National Public, in violation of The "constitutional", And The laws of This country; And Their "Sworn oath". They have no respect, for The "constitutional", The laws of our country; Nor The People, it Governs.

They carried out The same illegal And wrongful Purpose, Agreeably individually And collectivelly, After being repeatedly placed on notice, of said violative Acts, As State And federal Actors.

"In HARLOW v fitzgeral," 457 u.s. 880 (1982). The court held, That officials could be held Liable - under The civil statute; only if They violated clearly established Rights of which a reasonable Person should have known."

court
P.35. — In United States V. Guest, 383, U.S.
745 (1966); The court sustained an Indict-
ment, for ███ criminal conspiracy To violate
18 u.s.c. sec. 241, which prohibits con-
spiracies To deprive citizens of rights
protected by The "constitutional".

Congress has provided A civil remedy
for conspiracys To deny The equal
protections of The LAWS.
    It is obvious, That The defendants
have violated The following "OATH"
of office, To wit:
        "I do solemnly swear That I
will administer Justice without respect
To persons, and do equal rights To The
poor And To The Rich; And That I will
faithfully And impartially discharge
All The duties incumbent on me As,
According To The best of my Abilities
And understanding, Agreeably To
The "constitutional", And Laws of The
united states."

coart - Why does A Judge, swear To discharge
P.36. his/her duties agreeably To The "constitut-
ions" of The united States, if That "constitution",
forms no rules for Govern ment? if it is
closed upon him/her, And cannot be
inspected by him/her? If such be The
real State of Things, Then This is
worse Then solemn mockery - To
prescribe, or To Take This "oAth"
becomes equally a crime.

According To The u.S supreme court,
in CLEAVINger v. SAXNer, 106 S.ct.496,
(1985); The court has said, That in
general our cases have followed A
functional APProach To immunity
Laws. Id., At 810, 102 S.ct., At 2734.

(o)ur cases clearly indicates That
immunity ANALY sis rest on functional
categories, not on The status of The
defendant. Briscoe v. LAHue, 460 u.S.
At 342, 103 S.ct. 1119. "Absolute immunity
flows not from "RAnk, or Title" or Location
within The Govern ment". Butz v. Economou,
438 u.S., At 511, 98 S.ct, At 2913; but from
The NAture of The responsibility of The
individual officials.

court
P. 38

And in Butz, The court mentioned The following factors, among others, as characteristic of The Judicial process Are To be considered in determining Absolute As contrasted with qualified immunity: (A) The need To assure That The individual can perform his functions without harassment or intimidation; (b) The presence of safeguards That reduce The need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) The importance of precedent; (E) The adversary nature of The process; And (f) The correctability of error on appeal. 438 U.S., At 512, 98 S.Ct., At 2913.

The court further stated, "it is not "unfair" To hold "Liable" The officials who knows or should know he is acting outside The Law, And insisting on An Awareness of clearly established constitutional Limits will not unduly interfere with The exercise of official Judgment.

Cont
p. 39

see, Gray—Private wrong of Public servants; 47 calif.
L. Rev. 303, 339 (1959), see Also, Nix v. Whiteside, 106 s.ct.
988, (1986); Plaintiff, further contends That The (
defendants), Parole and Pardon board members
Are state Actors, Working in A "Neutral and
detached" hearing body; Morrissey V. Brewer, 408
L. Ed. 2d 484 (1972). The Parole board members
has been described As an impartial proffe-
ssional serving essentially As an Arm of
The sentencing Judge." See Also, sellar v.
Procunier, 641 f. 2d , At 1302, N. 15; quoting
Bricker V. Michigan Parole Board; 405 f. supp.
1340, 1345 (E.D. mich. 1975). And in The
Penalty context, The Parole board is
constitutionally required To Provide greater
due Process Protections Than is The
institutional disciplinary committee.,
At 56, 94 s.ct., At 2977.

  Plaintiff, was granted A mandatory 20 year—
45 yrs, Parole hearing, enacted by state Law.
Prior To said hearing, Plaintiff, was selected
To feature in A Prison Documentary, The
Farm." Plaintiff requested That his Appe—
arance, be filmed, because he would
Present his Newly discovered Brady—
evidence, of his innocence, That had
been hid from The Trial Jury.

court
██████
P. 40

— The hearing was filmed, and the participants and members was shown and what was said can be heard. It shows exactly how unjust, and Racist the members was.

Again, after the film was aired nationally, the public outrage, causing a flood of letters to all defendants, protesting the obvious injustice. A pardon hearing subsequently was approved, yet during said hearing, the chairman, made a verbal motion to remove himself, because he alleged, receiving threatening letters from the victims family.

The plaintiff, is in contact with all said information.

Thereafter, the victims written and published a Book, titled, "Raped beyond a shadow of doubt". Plaintiff learned that this book, contains further exonerating evidence.

The Book was mailed to him, but confiscated by prison officials.

court
p. ▮
40

Plaintiff, further contends, That from The moment of his illegal Arrest, The Police department, and The State of Louisiana, had no probable cause for Their Arrest. The newly discovered exonerating Brady evidence, will sustain same. The Police department in Avoyelles, held A Personal vendetta! Against Vincent Simmons, because of his Trubled Juvenile Past! The false Arrest, illegal identification proceeding, The subsequently beating and shooting of Plaintiff, while in handcuff, and while in The Police custody! will sustain same.

The Victims ▮▮▮▮▮ Book published 28 yrs Later, will give The court Their Version of The Line up Proceedure; what They Told Their uncle when reporting The crime To him/Them.

Court ▬
▬
P. 42

The victims Book, will also explain
To the court, That The victim said
her Rapist gave her a disese.
Plaintiff have exonerating evidence
That will prove That ▬ All The
state's witnessed Lied! And
That Their Actions is That of
The state. And That The police
department Action is That of The
State, That each defendants Action
And inAction is That of The state
And federal government.
The defendants in This Lawsuit,
while working under color of state
And federal Laws, Violated simmons
constitational rights, when They conspir—
ed And discriminated, To violate
The constitution, Laws And Treaties
of This country.
The defendants in This Lawsuit,
while working under color of state And
federal Laws, Violated simmons fifth—
Amendment rights when They refused
To afford him The equal protection
of The Law.

cont

P.43

— The defendants in This Lawsuit, while working under color of state and federal Laws, intentionally violated The constitution by refusing to correct a wrong They knew would have inflicted severe pain and hardship on Plaintiff.

The defendants in This Lawsuit, while working under color of state and federal Laws, violated simmons eighth amendment right when They subjected him to further cruel and unusual punishment and Thus left him to suffer continuously for the rest of his life for a crime They know was proven The prosecutor withheld material exculpatory evidence from his 1977 Trial.

The defendants in This suit, while working under color of state and federal Laws, violated simmons ninth amendment right, when They willfully and consistently denied him The fair administration of The Laws—

cont
███
p. 44

of This country as guaranteed To
all citizens.

The defendants in This suit, while
working under color of state and federal
Laws, violated simmons Thirteenth Amendment
rights when They subjected him To
slavery and involuntary servitude by
deliberately Allowing him To suffer The
punishment of A unconstitutional
conviction and sentence, for charges
The State of Louisiana illegally
prosecuted him for.

The defendants in This suit,
while working under color of state
and federal Laws, violated simmons
fourteenth Amendments Right
when They denied him The due
process And equal protections
of The Laws by depriving him
of his Liberty And refusing
To correct A miscarriage of
Justice.

Const
█████
P. 45

- The defendants in This suit, while working under color of state And federal laws, intentionally violated U.S. Const. Art. IV sec. 2, by conspiring And discriminating Against simmons by refusing To Afford him Privileges And immunities of The law when he was constantly denied post conviction And Habeas corpus relief, from which he clearly demonstrated his conviction And imprisonment was obtained illegally. -

The defendants in This suit, while working under color of state and federal laws, intentionally violated U.S. Const. Article III s. 1, when they performed Their Judicial duties in bad faith continually and caused A prisoner (simmons) To suffer illegal Punishment for (30) years. They are sued in Their individual capacity for monetary damages.

court ▮▮▮▮.
P. 46

— In Nix v, white side, 106 s. ct. 988 (1986); The court said; "The pancity of authority on the subject of any such "right" may be explained by The fact That such a notion has never been responsibly advanced;

The right To counsel includes, no right To have a lawyer who will cooperate with planned per-Jury. A lawyer who would so cooperate would be at risk, of prosecution for suboring perJury, and disciplinary proceeding, including suspension or disbarment.

The court Long ago Noted: And I quote; "All perJury related Testimony is at war with Justice, since it may produce a Judgment, Not resting on Truth. Therefore it cannot be denied That it Tends To defeat The sole ultimate — objective of a Trial." In re-Michael, 326 u.s. 224, 227, 66 s. ct 78, 79, 90 L. Ed. 30 (1945).

cont
P. 47

When The court has been faced with a claim by a defendant concerning prosecutorial use of such evidence, it has inconsistently held That a conviction obtained by knowing use of perjury Testimony is fundamentally unfair, and must be set aside if There is any reasonable likelihood That The false Testimony effected The judgment of The Jury. united states v. Agurs, 427 u.s. 97 103, 96 s.ct. 2392, 2397, 49 L.Ed. 2d 342 (1976); Napue v. Illinois, 360 u.s 264, 269, 79 s.ct. 1173, 1177, 3 L.Ed. 2d 1217 (1959); Mooney v. Holohan, 294 u.s. 101, 112 (1935); State v. DeRuise 802 so.2d 1224 (La.2001).

In Malley v. Briggs, 106, s.ct. 1092 (1986), The court stated:

(1) Trooper who allegedly caused plaintiffs To be unconstitutionally Arrested by presenting a Judge with a complaint and supporting Affidavit, which failed To establish

court ▓▓▓▓ establish probable cause was not entitled to absolute immunity, but

P. 48 only to qualified immunity from liability for damage, ▓▓▓▓▓ (2) A police officer in such case is not shielded from damage liability on grounds that act of applying for an arrest warrant is per se objectively reasonable— where officer believes that facts alleged in his affidavit are true, and that he is entitled to rely on judicial officer's judgment in issuing of warrant and hence finding that probable cause existed.

The court further stated, (A) neither the common law nor public policy affords any support for absolute immunity. Such immunity cannot be permitted on the basis that petitioner's function in seeking the arrest warrants was similar to that of a complaining witness, Since complaining witnesses—

court — were not Absolute immune at common law. As a matter of public policy, qualified immunity provides ample protection to all but, the plainly incompetent or those who knowingly violate the law."

The court went further in explaining: Our general approach to the questions of immunity under Sec. 1983, is by now well established. Although the state on its face admits of no ▆▆▆▆▆ immunities, we have read it "in harmony with general principles of tort — immunities and defenses, rather than in derogation of them."

Imbler v. Pachtman, 424, u.s. 409, 418, 96 s.ct. 984, 989, 47 L.Ed. 2d 128 (1976).

Our initial inquiry is whether an official claiming immunity under Sec. 1983, can point to common-law counterpart to the privilege he asserts. Tower v Glover, 467 u.s. 914, 104 s.ct. 2820, 81 L.Ed. 2d 758 (1984).

court

P. 50

— If, "An official was accorded immunity from Tort actions at common law when the civil rights Act was enacted in 1871, The court next considers whether sec. 1983's history or purposes nonetheless counsel against recognizing the same immunity in sec. 1983 actions." Id. at, 920, 104, S. ct., at 2825.

Thus, while we look to the common-law for guidance, we do not assume that "congress intended to incorporate every common-law immunity into sec. 1983, in unaltered form. our cases also makes plain that "(f)or executive officers in general, qualified immunity represents the norm. Harlow, supra, 457 u.s. at 807, 102 s. ct. at 2732. Like federal-officials, state officials, who seeks absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy "required An exemption of That scope. Butz v. Economou, 438 u.s. 478, 506, 98 s. ct. 2894, 2911, 57 L. Ed. 2d 895 (1978).

Cont
51.

further, in Hud soal v. city of New-
Orleans, No. 96-30964, http://www.ca.
5.u.s.courts-gov/opinions/pub/96/-
96-30964-cv0.HTM. The court stated,
we note That The question presented
would by governed by The six-factor
Test we established in clark v. Tarrant
county, 798 f.2d 736, 744-45 (5th cir. 1986),
and That in its CLARK analysis The
district court should defer To Louisiana's
interpretation of its statutes and
case law. Those factors are:
1. whether The state statutes and
case law view The agency As an
arm of The state; 2. The source of
The entity's funding; 3. The entity's
degree of local Autonomy; 4. whether
The entity is concerned primarily with
Local As opposed To statewide problems;
5. whether The entity has The Authority
To sue and be sued in its own name;
And 6. whether The entity has The
right To hold or use Property - see,
Diaz v. Allstate Ins. Co., 433 So.2d 699
(LA. 1983),

Cont
P.52.

The Orleans Parish District Attorney's office is under State control; (2) it is unclear who would be Liable to Pay a Judgment Against The office; (3) The office does not enjoy Local Autonomy; (4) The Orleans Parish District Attorney's office is Primarily concerned with State rather Than Local concerns; (5) A suit Against The office necessarily raises claims Against The District Attorney in his official capacity; (6) and That The office holds and uses Property Titled both in The name of The city of New Orleans and in The name of The State of Louisiana. See, ex Parte Young, 209 u.s. 123 (1908); exception to The Eleventh Amendment Applies when a Suit is brought Against a State official, as opposed to a State entity, challenging The constitutionality of his action, and The relief involved is Prospective; Voisin's oyster House, Inc. v. Guidry, 799 F.2d 183, 188 (5th cir. 1986) -

Court
P. 53.

See, Also Craine v. Texas, 766 f. 2d 193 (5th cir. 1985); see, Maitewa, 816 f. 2d At 1064 N. 1. See, Also, Pendergrass v. The greater New Orleans Expressway Commission, 144 f. 3d 342, 344 (5th cir. 1998). Cciting Edelman v. Jordan, 415 U.S. 651, 663 (1974). See, Chrissy f. by medley v. Mississippi Dept of Public welfare 925 f. 2d 844, 849 (5th cir. 1991). See Also, Kennedy Memorial Foundation v. Mauro, 21 f. 3d 667, 670 (5th cir. 1994); Warnock v. Pecos County, 88 f. 3d 341, 343 (5th cir. 1996). See Also, State v. Taylor, 11 So. 132 (La. 1892). See Regents of The University of California v. Doe, 519 U.S. 425, __. N. 5, 117 S. ct. 900, 904 N. 5 (1997) federal Law ultimately controls The scope of our Eleventh Amendment Analysis. see id; see Also Eanes N. State Board of Certified Public Accountants, 139 f. 3d 1033, 1035 — 1036 (5th cir. 1998) That is, federal Law has designed our Eleventh Amendment Analysis, And —

court
P54

And it alone sets The bounds of what we Look To in conducting our inquiry; Although federal Precedent requires That we Look To The State's view of The entity in question To help us reach our conclusion, And That we do so by Looking at State Law, This State Law is relevant only To The extent That it gives us insight into how The State Perceives The entity. See, Jacintoport Corp., 762 f.2d at 441. considered An indemnification Statute, obliging The State To pay for Judgments rendered against The defendant in his official capacity, sufficient To fulfill This factor. See Voisin's Oyster House v. Guidry, 799 f.2d 183, 188 (5th cir. 1986). See also, Mairena v. foti, 816 f.2d 1061 (5th cir. 1987). Earles, 139 f.3d At 1036.

Court
p.55

— See Jacintoport, 762 F.2d at 441-
42 (finding the possibility that
the state could be liable for a judg-
ment if two other parties defaulted
as having "only an ancillary effect
on the state Treasury" and there-
fore insufficient for "purposes
of the Eleventh Amendment.
The fifth factor we look to is
the entity's capacity to sue and
be sued." Earles, 139 F.3d at 1038.
We count this factor against eleventh
Amendment immunity if the entity
has these abilities. See, Pewder-
grass, 144 F.3d at 347.

See Also, "McMillian v. Monroe County,
520 U.S. 781, 117 S.ct. 1734 (1997).
See flowers v. Phelps, 964 F.2d 400,
401 N.2 (5th cir. 1992)(per curiam), And
The existence of an indemnification
Statute Promising to Pay Judgments
When an officer is sued in his
individual capacity does not extend
the Eleventh Amendment's protections
Around the officer.

court
P. 56

See, _Flowers_, 964 f. 2d At 401 N.2
(citing _Downing V. Williams_, 624
f. 2d 612, 626 (5th cir. 1980)("such
And indemnity statute is only
And Agreement between The state
And These individuals And cannot
Thereby be converted into An
extension of Eleventh Amendment
immunity by the state."); vacated
on other grounds, 645 f. 2d 1226 (
5th cir. 1981).

In Regents of The university of
California V. Doe, The supreme
court confronted The question
of "whether The fact That The federal
Government has Agreed To indemnify
A state instrumentality against
The costs of litigation, including
Adverse Judgment, divests The state
Agency of Eleventh Amendment immunity."
519 u.s. At 426. The court unanimously
Answered This question in The negative,
reasoning That "with respect To The
underlying Eleventh Amendment question,
it is The entity's Potential legal liability,
rather Than its Ability or inability To —

court
p. 57.

To require a Third Party To reimburse
it, or to discharge The Liability in
The first instance. That is —
irrelevant." Id. at 431. While
we do not reach The question,
we cannot help but notice That
The court made sure To observe
That "The question whether
a money Judgment against
a state instrumentality or
official would be enforceable
against The state is of con-
siderable importance To Any
evaluation of The relationship
between The state And The
entity or individual be sued."
Id". at 430.

   Therefore, with respect
To "clean And very careful
analysis of This matter, It
is the interest of Justice,
That This matter comes
And moves via This Hon.
court.

58

"Summary of Plaintiff's criminal case"

As previously discuss, Plaintiff is a black man from Louisiana who in 1977 was arrested, charged indicted for Aggravated Rap of two (2) white fourteen-year-old alleged victims. From his arrest to his conviction, of the amended charges the day of trial, to two (2) Attempted Aggraved Rape, and to his conviction and sentence of 100 years at hard labor, no more than two (2) months elapsed.

According to the testimony of State's witnesses at trial, at about 9 pm on May 9, 1977, 18 year old Keith Laborde and his 14-year-old twin cousins Sharon and Karen Saunders stopped for gas at a 7-11 in Marksville, Louisiana. Keith testified that as he pulled his car into the station's parking lot, he noticed a

court
P. 59

strange black man staring at him.
Keith testified that he got out
of the car and asked the stranger
how he was doing. According to
Keith, the man told Keith in an
aggressive manner, that Keith
had almost ran him over as he
was parking his car. Keith denied
trying to run over the man and
asked the stranger if he
wanted to fight, to which the
stranger allegedly replied: "I
don't fight, I shoot!"

. At trial, Keith testified that
despite the potential altercation,
Keith and the man shook hands
and Keith agreed to give the
stranger a ride. At trial Keith
testified that the black man
allegedly identified himself by
the name of "Simmons". Keith,
Sharon and Karen all testified
that Karen and Sharon climbed
into the passenger seat beside
Keith and the stranger got into
the back seat of Keith's car.

cont
P 60

Keith Testified That The stranger
Proceeded To direct Keith To
A remote Location - At Trial,
Sharon Testified That Keith
And The girls began To get
nervous when The stranger
Told Keith To Turn down The
remote little California road.
He ordered Keith To Park And
Turn off The ignition - At Trial,
Keith Alleged That The stranger
flashed A handgun As he was
ordering Them About.

According To Keith's Trial
Testimony, Keith eventually
stopped The car, And The stranger
was brandishing A gun - Then
Proceeded To Take The Keys
And Lock Keith in The Trunk.
Sharon Testified That The
stranger Told The girls To undress.
Karen Testified That she Tried
To run Away And she, Too, was
Locked in The Trunk with her
Cousin.

Cont
P61

According To sharon's Trial Test-
imony, The Stranger proceeded
To vaginally rape sharon sanders.
she was Then placed in The
Trunk with her sister And cousin
while The stranger drove
Them To A second Location.

According To Karen's Trial Testimony
At This point he got Karen out of
The Trunk And raped her Anally
And Vaginally. Karen further Test-
ified That At The Third stop, he
Anally raped Karen Again And
forced her To perform oral sex
on him. Then The stranger Allegedly
popped one of The Tires on
The car with A Tool from The
Trunk. According To Karen's
Testimony, he made Karen write
Their names down on A piece
of paper, Threating That he would
come after Them if They Told
Anyone of The event of That
evening. finally, They dropped him
off At A pay phone And drove
home To Their grandparents house,
where The Three spent The night.

count
P 62

The girls did not Tell anyone About The incident until Almost Two (2) weeks later on may 22, 1977, when Karen Sanders Told her first cousin.

The incident was reported To police on may 22, 1977 Long After All VAluAble physical And DNA evidence had been Lost. "Vincent Simmons" was misteriously Arrest The next day on may 23, 1977.

No information was ever given At Trial As To why PlAintiff was immediately Suspected And Arrested.

On may 23, 1977, After his Arrest, Karen And Sharon, And keith was brought To The police station, And Told by The police, That we have Arrested The man we believe raped you All. They identified PlAintiff from A physical Line-up in which PlAintiff was The sole PArticiPant To APPeAr in hand-cuffs.

court
p. 63

on MAY 23, 1977. Despite The girls description of The perpetrator as a black man, The line-up also included at least one clearly caucasion participant.

At his Arrignment on June 16, 1977 plaintiff entered a plea of not guilty. The Jury Trial was held on July 19 and 20, 1977, After which The Jury returned a verdict of guilty as charged To Two (2) counts of La-R.S. 14: (27) 42, relative To Attempted Aggravated Rape. On July 28, 1977, plaintiff was sentenced To 50 years for each count, To run consecutive.

"Discovery of New Evidence" Before plaintiff was brought To a preliminary hearing, A month and a half After his arrest, A Medical examination was performed on June 10, 1977. —

court
P64

revealing That Sharon sanders Hymen was still perfectly intact. Also a medical examination was performed on Karen sanders, but it was inclusive as to whether actual penetration did occur. However, it was noted That she had contracted a venerial disease from an unknown source.

Somewhere before a preliminary hearing was held The prosecutor Jannette To Knoll and her husband Eddie J. Knoll, learned of these reports, But Tending to ignore Their importants They kept Them from The court and The defense. At The preliminary hearing both Sharon And Karen sanders Testified That Simmons raped Them.

Cont P65

During The course of A few weeks Thereafter The prosec- utors decided on her/Their own To Amend The indictment because she/They knew They could not prove Those girls were actually raped, knowing very well That The medical reports would contra- dict Them.

Oddly, on The day of Trial The State actors, Allowed The clerk of court To read The Amended indictment To The Jury, making it seem To Them That The grand- Jury had originally charged Simmons with Attempted Aggravated rape.

"Fraud"
Bad faith, dishonesty, infidelity, unfairness - Any form of misrepresen- tation, Trickery, concealment, or cunning by which A person may intend And does obtain An Advantage over Another.

cont.
P.66

Furthermore, After The indictment was read to The Jury a bench conference was held in which The Prosecutors And defense Agreed To The Amended Charges without questioning The reason behind The Prosecutors — intentions.

Yet, defense counsel knew all Along That The Prosecutors was Amending The indictment based upon what was written in Those Medical reports — But instead of counsel moving To quash The indictment, he conspired or Acquiesced To The Amendment without question.

"Breach of Duty "
A right, Duty, obligation, Responsibility or Law.

Court
P. 67

There After, The Judge dismissed All of The subpoenaed police officers involved in The investigation of The case, And The Arrest of Plaintiff, To keep Them from Testifying As To What Those girls Actually Told Them.

"Legal Rights And Duties"
duties Are either Absolute or relative. Absolute duties Are Those imposed by law To protect The social interest in The peace, order And well being of The community.

"Relative duties"
Are Those recognized by law To protect The interest of A particular individual.

Court
P. 68

It is Possible for one ~~the~~
violation of duty by wrongful
act or omission to infringe
on both social and individual
interest. In other words, a
single act can infringe upon
absolute and relative duties.
   This causes both a civil
and criminal liability on
the part of wrongdoer.
   "The rules of criminal
law" impose absolute
duties, and the rules
of civil law imposes
relative duties.

   "Elements of Rights and
duties"
   every right conferred by law is
a right that belongs to a person
and is operative against person
or persons — so, every duty
imposed lays an obligation
on a person or persons in
favor of another person.

cont
P69

The owner of the right, is
The subject of The right. He
or she is The person for whose
legal advantage The right is
conferred or recognized.
The person on whom The
right is imposed is The
subject of The duty. This
duty is an obligation To
act or refrain from Acting.
The owner of The right
is required To receive
This Action. This require—
ment is The content of
The right.
It is call A right in rem
In respect of A Thing.

~~Right A~~ " Justic
Murray V. carrier, 477 U.S. 478,
488, 106 S.Ct. 2639, 91 L.Ed. 2d. 397
(1986) coleman X.501 U.S. At 752.
Powell V. Alabama, 287 U.S. 45, 53
S.Ct. 55, 77 L.Ed. 158 (1932).

cont

P.70

- Plaintiff, contends further, The defendants Jane + T. Knoll, conspired during The Jury Trial, To deceive, The Trial Jury, and The public, The plaintiff and defense; by Misrepresenting The facts of his case, when The State, Allowed The Madam clerk, To Amend The indictment, during Trial, when The Trial Jury, were Told That The grand-Jury, had indicted plaintiff for The Attempt. Agg. Rapes of The Two Alleged victims! In violation of L.C.Cr.P. Art-487. see State V. Moliere, 2006 WL-1382, 204 (La. App. 4th cir. 5/5/06); State V. Wheeler, 665, So. 2d 1286, (La. App. 4th cir. 12/14/95); and State V. Johnson, 637, So. 2d 1033 (La. 1994).

Plaintiff, prays That in The interest of Justice, granted To All citizens Alike, and guaranteed by our "Constitution" and The Laws deriving There from; That This Hon. court, will Thoroughly review, All courts records, files, micro film, Tapes, etc, etc, so That an impartial decision/Judgment be rendered in The interest of Justice.

Court
█████
█████
P. 71

"Statutory Entitlements An Natural Liberty"

Between Roth and Loudermill The Court decided many cases raising The question of when There is A "statutory entitlement" or "grievous loss" Amounting To A Property and Liberty interest.

(1) Property: state-created rights.

In Goss v. Lopez, 419. u.s. 565 (1975), The Plaintiffs were sixth-grade students suspended Temporarily — for periods of up To Ten days — from Public school. The court found A Property interest because State law Provided That students may be suspended only for "misconduct." In The court's view, This provision created "legitimate claims of entitlement To A public education. (Having) Chosen To extend The right To An education To People of Appellees' class generally, ohio may Not withdraw That right on grounds of misconduct, Absent fundamentally fair procedures To determine whether The misconduct has occurred."

cont

P-72

Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), involved a state statute— prohibiting discrimination on the basis of handicap and providing that within 120 days of the filing of charge of unlawful— discrimination, the state fair employment— practice commission "shall convene a factfinding conference." In the Logan case the commission— failed, through negligence, to hold the hearing— within the requisite time, and the Plaintiff's claim was extinguished by state law. The court held that the state-created right to redress ■ of unlawful discrimination amounted to a property interest and that, under state law, that right was to be "assessed under what is, in essence, a 'for cause' standard, based upon the substantiality of the evidence." The — Plaintiff was therefore entitled to a hearing.

(2). Liberty. Paul v. David 424 u.s. 693 (1976), involved a person arrested on a charge of shoplifting; Davis's name was placed on a flyer sent to 800 merchants in Louisville, designat— ing him as an active shoplifter. The charges were dismissed and Davis brought suit, claiming that the action had deprived him of his—

Court        constitutional interest in reputation.

P.73

Note: "Injunction as Prior Restraint" see fiss, The civil Rights Injunction ~ 70-74 (1978). see Barnett, The puzzle of Prior Restraint, 29 Staw. L. Rev. 539, 551, 552 (1977); See Sylvania V. Consumers Unioal, 445 U.S. 375, 386 (1980). National Socialist party V. Skokie, 432 U.S. 43 (1977). see In Pittsburgh press Co. V. Pittsburgh commission on Human Relations, 413 U.S. 376 (1973). see, united States V. Grace, 461 U.S. 171 (1983); see police Department of chicago V. mosley, 408 U.S. 92 (1972); McAuliffe V. mayor of New Bedford, 155 mass. 216, 29 N.E. 517 (1892); perry V. Sinder mann, 408 U.S. 593, 597 (1972); See Reitman V. mulkey, 387 U.S. 369 (1967) see, Shelley V. Kraemer, 334 U.S. 1, (1948) see, Evans V. Newton, 382 U.S. 296 (1966) Also, see Burton V. wilmington parking Authority, 365, U.S. 715 (1961); Rendell-Baker V. KoHal, 457 U.S. 830 (1982). Nixon V. Herndon, 273 U.S. 536 (1927). Nixon V. Coadone, 286 U.S. 73 (1932).

court
P. 24

Plaintiff, further contends That The (defendants), state Actors, initially conspired To default, Their (Professional Responsibilities), established by The (ABA); relating To The Administration of criminal Justice. That Their Actions and ommissions, caused dire Prejudice, To Plaintiff's rights.

The laws, That were in effect, when Plaintiff was wrongfully — convicted, should supersede! All issues in This suit. The defendants have knowingly And intentionally, conspired, continually via overt — Acts, for (30) yrs. The records, The evidence, The law, And The constitutional will sustain — same.

If The defendants or Their Attorneys, signature, refuting — These claims; Plaintiff, request "sanction," be imposed in Accordance, Rule 11.

court
P. 75

The fundamental laws and basic rights
when "failure To Arraign", is stated as
follows To wit: in State v. ulger chenier,
1880 WL 8433 (LA.); State v. Epps, 27 A.
227; State v. ford 30 A. 311; state v. chris—
tians 30 A. 367; State v youchuans, 187
LA. 281, 174 so. 356 (April 26, 1937); State v.
Revells, 31 LA. Ann. 387; Isaac sartorious v.
The State, 1852 WL 2053 (miss 1852)
State v. Ledeaf, 230 LA. 780, 89 so.2d 299
(1956); State v. Smith, 594 so.2d 467
(LA. App. 4 cir. 1991); Whalen v. u.s,
445 u.s. 684, 100 S.ct. 1432)(1980)
1 S.ct. 601, 106 u.s. 629, u.s. v. Harris,
(u.s. Tenn. 1883) Hamilton v. state,
82 S.ct. 157 (1961) — 368 u.s. 52, 82 s.ct.
157, 7 L.Ed. 2d 114; In united states—
v. Lewis, 146 u.s.370, 372, 13 s.ct.136, 137,
36 L.Ed. 1011 (1892). Arraignment "far from
a mere formalism", is a stage important —
enough to entitle The Accused To The
Presence of counsel.—Kirby v. Illinois,
406 u.s. 682, 689-90, 92 s.ct. 1877, 1882-83,
32 L.Ed.2d 411 (1972); 91 s.f. 2d 1276:

cont
P.76

"The civil Rights cases, 109 U.S. 3 (1883) =
The civil Rights Act, in contrast,)
Proceeds ex directo To declare That
certain Acts committed by individuals
"shall" be deemed offences, And shall
be prosecuted And punished by
Proceedings in The courts of The
united states. It does not profess
To be corrective of Any constitutional
wrong committed by The states. (It)
Applies equally To cases Arising in
states which have The Justest Laws
respecting The Personal rights of
citizens, And whose Authorities
Are ever ready To enforce such
Laws, As To Those which Arise
in states That may have violated
The Prohibition of The Amendment.
IN other words, it steps into
The domain of Local Jurisprudence
And Lays down rules for The
conduct of individuals in society
Toward each other, And imposes
sanctions for The enforcement
of Those rules, without referring

court
P**77**

— in any manner to any supposed
Action of The State or its Autorit-
ies; 11 The wrongful Act of An
individual, unsupported by Any
(State) Authority is simply A
Private wrong, or A crime of
That individual, An invasion of
The rights of The Injured Party.
it is True, whether They effect
his persoan, his property, or his
reputation; but if not sanct-
ioned in Some way by The State,
or not done under State —
Authority, his rights remain
in full force, And may presum—
Ably be vindicated by resort
To The Laws of The State
for redress. An individual —
cannot deprive A man of his
right To Vote, To hold Property,
To buy And Sell, To Sue in
The courts, or To be A witness
or A Juror; he may, by force or fraud,
interfer with The enjoyment of The
right in A Particular Case; (but)

cont
P 78

(but) un less Protected in These wrongful Acts by some shield of State Law or State Authority, he cannot destroy or injure The rights; he will only — render himself Answerable To satisfaction or punish— ment; And Answerable There for to The Laws of The State where The wrongful Acts Are committed.

Let Justice finally be executed in Accordance To The Constitution.

Respectfully

Vincent Simmons #85188

court
~~P79~~

"Relief's Sought."

Plaintiff, Vincent Simmons #83188, respectfully seeks The following — relief, To wit:

(1) That This Honorable court, enforce — will of The constitution, And its full Powers;

(2) Prohibit Any further deceptive methods by Any defendants, To delay Justice;

(3) Prohibit, Any retailation, by way of The defendants, Their colleagues, friend or Any one Acting in concert Therewith;

(4) That An InJunction be Issued directing A Appropriate designee, Judge, To immediately hear This Matter in Accordiang with substant — ial due Process;

(5) That A complete record of said proceeding, There After be Provided To This Hon: court, for its review;

court

P. 80

Relief - continue;

(6) That it be determined, At said hearing, whether Probable cause existed;

(7) That if be determined, That if it was the fault of the state Actors, who hid said evidence;

(8) That it be determined, if the Alleged victims gave the Sheriff Department Investigative Team, Plaintiffs, Vincent Simmons, Name, on the date, May 22nd, 1977;

(9) That it be determined, if Plaintiff Vincent Simmons, was the only Participant in the line-up, in handcuffs;

(10) That it be determined if the Alleged victims gave false Testimony at Plaintiff's Trial;

(11) That it be determined, if the state Actors, concealed the Testimonys, of the investigative And arresting officers;

# Relief continues —

court
~~████~~.
P.81

(12) That it be determined, if
plaintiff was shot, in police —
custody;

(13) That it be determined, if
plaintiff was legally arraigned
on The charges and conviction
he is now in prison for;

(14) That it be determined, if
the state actors, allowed false
information to be given to
The Trial Jury;

(15) That it be determined, if
Trial counsel for plaintiff, did
any pre Trial investigations, or
filed any discovery motions
with The court, on plaintiff's
behalf;

(16) That it be determined, if
The state actors, subornated
perjury in mr-Simmons Trial;

(17) That it be determined, if
The victims Told police department
Investigators, That They didn't
know The name of Their Alleged
rapist;

Relief continues —

court

P-82

(18) That it be determined, if The alleged victims was on drugs, when The alleged crimes occured;

(19) That it be determined if The police department, arrest-ing officers, Told The alleged victims That Vincent Simmons had been arrested for Raping Them;

(20) That it be determined, if plaintiffs constitutional rights have been violated by The State Actors;

(21) That subsequently, on plaintiff claims for damages, a Trial by Jury is pending;

(22) That a Judgment in favor of plaintiff, will result in all charges being dismissed, expunged from national records, film, laboratories, etc, etc;

Court
~~████~~
P. 83

Relief continues—

(23) That damages sought
in The full amount will be
Awarded, And collected
from All defendants And
Their insurers;

(24) That A writ of fieri—
fier, To seize All Assets, pend—
ing Judgment;

(25) That plaintiff, reserves
All right To Prosecute each
defendants;

(26) That The interest of
Justice, be finally recog—
nised, And Prevail; effecting
National remedies in The
Judicial executive And Legis—
Lative Departments;

It is So, Prayed.

Respectfully Submitted By;
S/Vincent Simmons #85188
Vincent Simmons
#85188 CAMP-C-JAG1-R-11
LA—State Prison
ANGOLA, LA 70712

Ex A
Cont
~~[struck out]~~
P·84

## "Conclusion"

Plaintiff, conclude, as The court, stated in shelley V. kraemer, 334 u.s.l.-(1948);

(That) The action of state courts and Judicial officers in Their official-capacities is To be regarded as action of The state within The meaning-of The fourteenth Amendment, is A Proposition which has long been established by decisions of This court - - -

one of The earliest Applications of The Prohibitions contained in-The fourteenth Amendment To Action-of state Judicial officials occurred-in cases in which Negroes had been excluded from Jury service in criminal Prosecutions by reason of Their race or color. These cases demonstrates, Also, The early recognition by This court That state Action in violation of The ~~[struck out]~~ Amendment's Provisions-is equally repugnant To The con-stitutional commands whether dir-ected by state statute or Taken by A Judicial official in The Absence-

ex-A

cont

~~[struck out]~~

P. 85

— Absence of statute. Thus, in Strauder v. West Virginia, 100 u.s. 303 (1880), This court declared invalid a state statute restricting Jury service To white persons as amounting To a denial of The equal protection of The Laws To The colored defendant in That case. In The same volume of The reports, The court in ex Parte Virginia, (100 u.s. 339 (1880)), held That a similar discrimination imposed by The Action of a state Judge denied rights Protected by The Amendment, despite The fact That The Language of The state statute relating To Jury service contained no such restrictions.

The Action of state courts in imposing Penalties or depriving Parties of other substantive rights without Providing adequate notice and opportunity To defend has, of course, Long been regarded as a denial of The due Process of Law guaranteed by The fourteenth Amendment.

Ex A

Court
P. 86

In numerous cases, This court has reversed criminal convictions in State courts for failure of Those courts To Provide The essential ingredients of a fair hearing——

But The command of The Amendments must be complied with. Against This background of Judicial construction, extending over a Period of some Three-quarter of a century, we are called upon To consider whether enforcement by State courts of The restrictive Agreements in These cases — May be deem To be The Acts of Those States; And, if so, whether That action has denied These Petitioners The equal Protection of The Laws which The Amendment was intended To insure. We have no doubt That There has been State Action in These cases in The full And complete sense of The Phrase (100 u.s. 339)

fair Justit

court
p. 85

"Certification"

I, plaintiff Vincent Simmons #85188, do hereby verify That The allegations contained in The foregoing ~~legal brief.~~ Are True And correct To The best of my Knowledge And further certify That a copy of same has been served upon The defendants, George W. Bush, President, his Attorneys; The u.S. Attorney General D.O.J, 950 Pennsylvania Ave, N.W. Washington, D.C. 20530; The u.S. Attorneys office, 501 3rd Street N.W. Washington, D.C. 20001; Gov. Kathleen Blanco, P.O. Box 94004, Baton Rouge, LA. 70804-9004; Louisiana supreme court, 400 Royal Street, New Orleans, LA. 70130; The Third circuit court of Appeal 1000 Main Street, Lake Charles, LA. 70615; 24th Judicial District court, 312 N. Main Street w/Marksville, LA. 71351; Louisiana Pardon Board, P.O. Box 94304, Baton Rouge, LA. 70804-9304; United States District court, for The western District of Louisiana, 300 Fannin Street Suite 1167, Shreveport, LA 71101-3083;

cont
P.88

United States 5th circuit court of appeal, 600 South Maerstri Place New Orleans, LA. 70130; This legal mail is/has been placed in the hands of prison officials, R. Tubbs, designated to handle all prisoners legal mail, to be delivered to the prison U.S. post office, with a withdraw form, to cover the expense for, certify return mail, so that each defendants stated above will receive a copy of said ~~legal brief~~, mailed this ~~10th~~ day of J~~uly~~ 2007.

Respectfully submitted
~~S/Vincent Simmons~~ #85188
Camp-C-Jag-1-R-11
La. State Prison
Angola, LA. 70712

Copy sent,
verifying same, has been done this ~~10th~~ day of J~~uly~~ 2007;
to clerk of court, United States District court, for the District of columbia, E. Barrett Prettyman U.S. court house, 333 constitution Ave, N.W. Washington, DC. 20001.

cowt
P 94

" Order "

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

**VINCENT SIMMONS,**
    Plaintiff(s),

    vs.            **Civil Case No.  07-0779 (HHK)**

**GEORGE W. BUSH, et al.**
    Defendant(s).

## NOTICE REGARDING EXHIBIT

Pursuant to the procedures for filing documents electronically, as outlined in the

previous Order of the Court, this Notice serves as notification that bulky exhibits to

Plaintiff's Opposition have been filed in paper form in a the Clerk's Office.  They are

available for public viewing  and copying between the  hours of 9:00 a.m. and  4:00 p.m.,

Monday through Friday.

             **NANCY MAYER-WHITTINGTON**

                  Clerk