court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

RECEIVED

AUG 2 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

VINCENT SIMMONS
       Plaintiff

                                        Civil Action: 07-CV-779

v.

GEORGE W. BUSH. JR. et al
           Defendants

Reconsiderations and
OPPOSITION TO DEFENDENTS MOTION TO
            DISMISS  # 3

NOW INTO COURT comes plaintiff _Vincent Simmons #85188_
who respectfully objects to defendants motion to dismiss on all grounds
which will be argued below:

PLAINTIFF _Vincent Simmons #85188_ Filed a title 42 U.S.C. § 1983
1981, 1985, and 1986 civil rights complaint seeking compensatory and
punitive damages against the state judges, the Governor, and the
Pardon Board For violations of his constitutional rights, priveledges
and immunities. He also sought declaratory and injunctive relief pursuant
to 28 U.S.C.A. §§ 2201 and 2202. He requested supplemental jurisdiction
pursuant to 28 U.S.C.A. § 1331, 42 U.S.C.A. § 1343 (a)(1)(2) and (3), and
28 U.S.C.A. § 1346 (b)(2).

His complaint alleges that the defendants in the 12th Judicial District Court and the Third Circuit Court of Appeals conspired and discriminated to deprive him of his constitutional rights when they committed a miscarriage of justice by applying the wrong procedural standard for deciding tolling of past conviction relief.

In several amended complaints he claimed that the defendants showed hostility towards him and favoritism because the D.A. over his case 30 years ago is presently a Louisiana Supreme Court justice. Furthermore, he alleged that La. C. Cr. P. art. 930.8 is unconstitutional in that it does not prevent a court from circumventing its applicable exceptions, as was done in his case.

The suit was originally filed in the District of Colombia. On April 20th, 2007 the court mailed a summons to plaintiff to serve on all parties. On July 13th, 2007 the defendants filed a motion to dismiss. And on July    , 2007 this court ordered plaintiff to file a response to defendants motion.

2.

1

In the defendants First argument they allege service of process was legally insufficient and invalid. This argument has no merit. Service of process is legally sufficient and valid on the defendants according to Wise v. Herzog. 114 F. 2d 486 (District of Colombia 1440) ("Service of process is the means by which notice of judicial action is given and an opportunity to be heard is offorded, and it must be accomplished by a method reasonably calculated to afford the party sued the constitutional protection of due process of Law") id at 488.

Wise attempted service through ordinary mail, the defendants refused to accept it, and the court entered judgment by default. The court then reversed to determine whether wise was given proper notice through the mail. The court found she had not, after she denied ever receiving any summons or refusing to receive it.

In the present case, plaintiff mailed his summons to defendants through the mail, and they received, and they never claimed a due process violation. Service of process by registered mail a method which, with almost absolute certainty insures delivery to the place of address. See Hess v. Pawloski 274 U.S. 352. 47 SCt 632. 71 L.Ed. 1091: Shushereba v. Ames 255 N.Y 490. 494. 175 N.E. 187. 188

2.

The defendants argue in part II of their Motion To Dismiss that the 12th Judicial District Court and the Third Circuit Court of Appeals are not entities with legal capacity to sue or be sued. The defendants argument although true, is misplaced. Louisiana courts are government agency's and can be held liable when they create a policy, custom, practice or usage that has the force of law. See Brooks v. Fitch 534 F. Supp. 129 (N.J. 1981). ("Governmental unit may be found liable under the Civil Rights Act for injuries inflicted upon a private individual pursuant to a governmental custom, policy, ordinance, regulation or decision: Liability may also be triggered if the policy or custom in question is executed by those whose acts may fairly be said to represent official policy.")

In Monell v. Department of Social Services 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that local governments may be the targets of a § 1983 action where official policy or governmental custom is responsible for a deprivation of rights protected by the constitution, but it rejected governmental respondeat superior liability under § 1983.

Plaintiff knows of no official policy of the respective courts which encourages direct or indirectly discrimination. Favoritism, hostility or otherwise in the manner of a conspiracy perpetrated by judges. Only through discovery could he find anything in essence thereto. However, Congress included custom and usages within its definition of law § 1983 because of the persistent and widespread discriminatory practice of state officials

in some area's of the post bellum South. As representative Garfield said. "Even where the law are just and equal on there Face, yet by a systematic maladministration of them, or a neglect or refusal to enforce their provisions, a portion of the people are denied equal protection under them." Although not authorized by written law such practices of state officials could well be so permanent and well settled as to constitute a "custom or usage" with the Force of Law[1]

Once the defendants acted without authority to deprive plaintiff of his constitutional right to procedural and substantive due process their decision had the Force of Law. And it can be deemed that since plaintiff cannot get around their wrongdoing and petition their court For redress of grievance the judge's activities are imputed to the agency, especially since the agency was made aware of the conduct of the judge's through his repeated attempts to be heard in their court.

---

1. It is common for the Third Circuit, Supreme Court, and 12th Judicial District. to go around or just simply ignore applying the applicable statutory dictums when dealing with pro se cases. Its a way to save time, money and energy in their view.

Interference with the right of access to the court gives rise to a claim for relief under section 1983.

In the present case this court must take caution when analyzing what was done to plaintiff by the courts to determine whether his right of access was violated. The first step in this analysis is the fact of when he first learned of the exculpatory reports in 1993. From then on the district court just simply issued a one word denial. The Third Circuit and the La. Supreme Court applied the bar of La. C. Cr. P. art. 930.8. which prevents filing a claim after the three year limitation[2] Nevertheless, after that attempt was made he filed a again in 1998. The district court upon hearing the petition a second time on this same issue applied the wrong provision as a means to circumvent its judicial determination under 930.8. which states:

**A.** No application for post-conviction relief. including applications which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has became final under the provisions of Article 914 or 922, unless any of the following apply:

1. The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his attorney.

---

2    The time limitation has been changed since then to two years.

Clearly this provision establishes and exception to the bar after the time Limitation has elapsed. The provision contains mandatory Lanuage, but instead of considering it the court used La.C.C.P. art 930.4 and claimed the evidence (or facts) were known to petitioner in 1993. Brady v. Maryland and 930.8 requires that newly discovered evidence must relate back to the trial. Therefore, the judges misapplication of the Law was obviously designed to keep plaintiff's claim from ever being heard. And till date no court has corrected this obvious injustice.

Furthermore, now since the Fifth Circuit has warned him not to File this claim again. what other recourse does he have to vindicate his rights? The legislature has not provided any type of Forum For situations Like this. So all that plaintiff can do is sue them For denial of access to court due process, etc... and conspiracy to obstruct justice.

## Procedural Due Process

PlaintiFF contends that he possesses an interest protected by the Fourteenth Amendment to Procedural due process. This contention stems from the United States Supreme Court holding in *Townsend v. Sain* 372 U.S. 293. 83 S.Ct. 745. 83 (1961) which held:

> "Oppurtunity For redress against detention in violation of Fundamental Liberties of person safegaurd against action by Federal Const-itution, though such oppurtunity presupposes oppurtunity to be heard, to argue and present evidence must never be totally Fore-closed."

7.

# NONJUDICIAL CONDUCT

The question that has to be asked by this Court is "when" did the judge's agree to make a nonjudicial decision in favor of state judge's. It first must take into consideration all the surrounding factors which might have influenced the judge's. First there is the fact that Jeanette Theriot Knoll is a Supreme Court Justice who can be embarrassed if it were ever known to the public she committed acts 30 years ago injurious to an innocent prisoner. (2). She was once employed as a district attorney, and (3) she is intimately associated with the judicial process.

All of these factors can easily be proven, but what has to be determine by them is whether the courts have secretly sympathize with the judge to shield her reputation. There is no way plaintiff can do this without evidence to support such. However he has offerd evidence that his belief that judges are conspiring together throughout the courts because he cannot expect them to be fair and abide by the law.

In Harper v. Merckle 638 F.2d 848 (5th Cir. 1981). a state judge allegedly jailed his friend's former husband to help his friend. The plaintiff had entered the judge's chamber merely to drop off a support payment for his former wife. The judge appeared without judicial attire and questioned plaintiff. When plaintiff refused to be sworn in for questioning by the judge and walked out of chambers. the judge ordered plaintiff apprehended for contempt of court. The judge then held a hearing. Found plaintiff in contempt of count and jailed plaintiff for three days.

8.

The judge's actions were purely personal in nature, as with the judges in this case. Relying upon the two-prong analysis of *Stump v. Sparkman* 435 U.S. 399, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). the Fifth Circuit used its own four-step analysis in determining whether the judge's actions were judicial acts clothed with absolute immunity. The Court considered whether,

(1) The precise act complained of, use of the contempt power, is a normal judicial function;

(2). The events involved occurred in the judge's chambers;

(3) The controversy centered around a case pending before the judge; and

(4) The confrontation arose directly and immediately out of a visit to the judge in his official capacity.

Citing *McAlester v. Brown* 469 F.2d 1280, 1282 (5th Cir. 1972) (Although the functions were judicial in nature and the events occurred in the judge's chambers, factors three and four were not satisfied, as the controversy centered around the domestic problems of one of the judge's friends and those problems were brought to the judge's attention in a social, not judicial forum. *Id* at 859. The Court concluded that the plaintiff had not entertained the expectation that judicial matters were at hand when he entered the judge's chambers on nonjudicial business. Thus, the judge's actions were not judicial acts *Id*.

Unlike the case subjudice, the judge's were acting in their judicial capacity over a case, and therefore would be protected by judicial immunity in their decisionmaking function. But when these judge's had decided prior to making their decision to bias plaintiff's case their actions amounted at most to a lack of impartiality, and they thereby were not judicial acts. These acts of the defendants were both the actual and the proximate cause of several violations. of plaintiff's constitutional rights including, inter alia: his due process right to a disinterested judge. In re Murchison. 349 U.S. 133. 75 S.Ct. 623. 99 L.Ed. 942(1955). Tomey v. Ohio, 273 U.S. 510 475 S.Ct. 437. 71 L.Ed 749(1927). his due process right to a judge who not prejudged his case United State v. Sciluto 531 F.2d 842. 844-46 (7th Cir. 1976). See United States v. Ginnell Corp 384 U.S. 563. 583. 86 S.Ct. 1698. 1710. 16 L.Ed.2d 778 (1966) and other rights that will be discussed later.

The statute 42 U.S.C.A. § 1983 embraces deprivation of both due process of law and equal protection of the laws, and the action charged was under color of state law Hornsby v. Allen 5th Cir. 1964 326 F.2d 605; McGuire v. Sadler. 5th Cir. 1964. 337 F.2d 902. It contemplates such deprivation through the unconstitutional application of a law by a conspiracy or otherwise. Lewis v. Brautigam 5th Cir. 1953. 227 F.2d 124. 55 A.L.R.2d 505 See also. Mizell v. North Broward Hospital District. 427 F.2d 468. 472 (5th Cir. 1970). It also permits damages including punitive damages Bassita v. Weir 3rd Cir 1965. 340 F.2d 74.

10.

La. C. Cr. P. art 914-930.8 (Post Conviction Relief) establishes plaintiff's right to petition the courts for relief from illegal detention.

For petitioner to recover under the procedural count of his complaint he must show a deprivation of a right guaranteed to him by state law, since the "action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the states." *Shelley v. Kraemer 334 U.S. 113. 92 L.Ed. 1161. 1180 68 S.Ct. 836, 3 ALR. 2d 441 (1948).*

In analyzing this problem: it is useful to state two polar propositions. Each of which is easily identified and resolved. On the one hand; the Fourteenth Amendment plainly prohibits a state itself from discriminating because of race[3]. On the other hand § 2 of the Fourteenth Amendment forbids the unconstitutional application of a law by a conspiracy or otherwise.

---

3.  Plaintiff disagrees with the definition of the terms "race" and "color" as an exception to the due process prohibition of "racial discrimination". He basis his argument on the fact that race or color was never a proven scientific fact of the natural identity of humans, but instead a theory. Race stemmed from the ideas of 18th century scientist and philosophers such as Johann Fredrich Blumenbach who was first to divide mankind (not hue-mankind) according to skin color. Then 19th and 20th century men like Joseph Arthur Bobineau, and Houston Stewart Chamberlain professed the superiority of races according to culture, heriditary differences, psychological and phsiological values of humankind. See On the Natural Varieties of Mankind (1865 repr. 1969). Colecho Diersarum Gentium Cranioram (1790 repr. 1828); and The Anthropological Treaties of J. F. Blumenback (1969).

The actions of the defendants may also have amounted to a violation of the Louisiana Constitution which provides in section 22 of its declaration of rights that "every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality or unreasonable delay. For injury to his liberty. La. Const. art 1 § 22 (emphasis added).

_____

None of the evidence discovered by these persuasive thinkers are persuasive enough to overcome the natural genetic origin of all humankind. In that era back then these men relied on physical, social, religious and biological factors that could be observed objectively in making reductions and comparisons to the superficial traits of humans. They were not familiar with the structure of the DNA double helix discovered in the 1950's by James D. Watson and Francis Henry Compton Crick.

Moreover, the mischaracterization of humans into seperate distinctive breeds defies early fundamental scientific proof that indicates that all human kind derived as a family unit. Not race! To prove such, one must look to the first step in the synthesis of melanin, which involves the conversion of Tyrosine (a protein found in all humans except Albino's) to dihydroxy phenynolalonine (dopa) and to dopa quinine (Tyrosinae) that is found in one specialized type of cell in the DNA chain (melanocyte) and found in aggregates called melonosomes. This protein is what gives all human their natural color.

Therefore, the word race is an artificial term and does identify humans and if incorporation into the 14th Amendment is unconstitutional... plaintiff will stick with just discrimination only.

Finally, plaintiff avers that these acts had the Force of Law and their effect was imputed to the agency. Therefore the Courts can be sued. These reasons, among other things, should justifing denying defendants motion

## VIOLATION OF RIGHT OF ACCESS

In this argument plaintiff will take the substance from a Louisiana Case to argue his point. In the case of Ryland v. Shapiro 708 F. 2d 967 (5th Cir 1983). the plaintiff's brought a § 1983 Lawsuit against a local prosecutor and his assistant. The prosecutor had murdered the Rylands daughter, and while acting under color of state law, prevented a full investigation into the case of their daughters death. For 11 months. They accomplished all this with the aid of a local coroner who falsified the cause of death, and claimed the daughter committed suicide The cover-up was exsposed by the attorney general of Louisiana; and the Rylands sued claiming the conspiracy prevented them from discovering their dauther's death.

The Western District Court of Louisiana initially denied the suit For Failure to state a claim and argued that the Rylands did not have standing to bring suit, and that the conduct of the defendants did not invade any legally protected right of the parents. Rather the court viewed the complaint as nothing more than one for failure to enforce the criminal laws of Louisiana. As a result, the court determined that the Rylands had only a generalized grievance against the defendants common to all citizens of Louisiana namely the enforcement of the criminal law. id at 970.

The Fifth Circuit reversed finding that the plaintiff's alleged a sufficient cause of action of conspiracy to obstruction of justice and denial of access to court. The Rylands case is similiar to the one before the bar in several respects. The defendants herein have misapplied the correct standard of law, and by doing so purposefully and willfully interferred with plaintiff's chances of being released and conspired to cover-up their wrong-doing for a period of 30 years.

Furthermore, once the defendants had his case reviewed by them and they failed or refused to correct their error and it resulted in a miscarriage of justice, they violated the constitution, and plaintiff's constitutional rights.

*The substantive right of access*

The due process clause has been construed under Article 4 to allow prisoner's meaning access to the courts. See e.g. Bounds v. Smith 430 U.S. 817. 97 S. Ct. 1491. 52 L.Ed. 2d 72 (1977). A mere formal right of access to the courts will not pass constitutional muster. Courts have required that the access be adequate, effective and meaningful Bounds v. Smith 97 S.Ct. at 1495. See also Rudolph v. Locke 594 F. 2d 1076. 1078 (5th Circuit 1979); and McGray v. Maryland 456 F. 2d 1. 6 (4th Cir. 1972) ("Of what avail is it to the individual to arm him with a panoply of constitutional rights if when he seeks to vindicate them, the courtroom can be hermetically sealed against him by a Functionary who, by refusal or neglect, impedes the filing of his papers?")

In making its decision to deny defendant's motion on the Eleventh immunity question this court is asked to consider First whether the actions of the judges amounted to an unreasonable delay starting From the day the Supreme Court of the U.S. denied his writ of certiorari or at the momment he Filed his third application For post conviction relief in the district court in July of 2006. Plus, this court will have to consider whether Rooker-Feldman and Heck v. Humphrey bars his suit.

An ancaylsis of the extent of a constitutional deprivation is not an exact science capable of quantification: rather it is qualitative in nature. *Thompson v. Washington* 162 U.S. App. D.C. 39 497 F.2d 626.636 (D.C. Cir. 1973) It was held by the Fifth Circuit that "if state officers conspire ... in such a way as to defeat or prejudice a litigant's rights in state court. that would amount to a denial of equal protection of the laws by persons acting under color of state law." *Dinwiddie v. Brown* 230 F.2d 465. 469 (5th Cir.) cert denied 351 U.S. 971. 76 S.Ct. 1041. 100 L.Ed. 1490 (1956). Conduct by state officers which results in delay in the prosecution of an action in state court may cause such prejudice. *Newark v. Shaw.* 628 F.2d 297 (5th Cir. 1980) cert denied 450 U.S. 931. 101 S.Ct. 1392. 67 L.Ed. 2d 365 (1981).

"Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accussed. It crowds the docket of the courts. increasing the costs for all litigants, pressuring judges to take short cuts interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhangthe entire process with the pall of disorgani

zation and insolubility. But even these are not the worst of what delay does. The most erratic gear in the justice machinery is at the place of fact finding and possibility for error multiply rapidly as time elapses between the original fact and its judicial determination.

## Conspiracy to deprive of rights

The eleventh amendment does not shields court agency's of liability when they have created a policy custom practice or usage of for conduct of its employees. See Monell v. Department of Social Services. 436 U.S. 638. 98 S. Ct. 2018. 56 L. Ed. 2d 611 (1978): and also Hanson v. Circuit Court of First Judicial Court. 591 F.2d 404. 410-11 (7th Cir.) cert denied 474 U.S. 907. 100 S.Ct. 220. 62 L. Ed. 2d. 143 (1979).

An action for conspiracy may be maintained under section 1983. Slavin v. Curry 574 F.2d 1256. 1261 (5th Cir.) modified 583 F.2d 779 (5th Cir. 1978) However, federal courts view conspiracy claims under section 1983 differently than similiar claims under section 1983. Of course, for a claim under § 1983 a conspiracy as such is not an indispensable element as it is under 1985. But it may be charged as the legal mechanism through which to impose liability on each and all of the defendants without regards to the person doing the particular act. Conspiracy is asserted in that situation (as in here) on more or less traditional principles of agency, partnership joint venture or the like.

Likewise discrimination can be maintained under § 1985 and §1981. See Baldwin v. Morgan 251 F.2d 780, 791 (5th Cir. 1958) and Griffin v. Breckinridge 403 U.S. 88, 102, 913 S.Ct. 1790, 1798, 29 L.Ed. 2d 338 (1971), (emphasis in original).

As plaintiff has argued beforehand the exception to racial discrimination is unconstitutional, therefore he will stick to his position that the courts have illegally excercised discrimination against him, while treating other defendants insufficiency of evidence claim fairly. Whether these acts listed herein are a widespread, systematic practice in the courts condoned or not, by the agency, plaintiff does not have the resources nor an attorney to make that determination. But he believes there is a wide spread systematic practice in the courts of Louisiana to discriminate against criminal defendants who engage in lawful or unlawful conduct with police officers and correctional officers.

Therefore plaintiff's suit should be allowed to proceed and defendants motion to dismiss on eleventh amendment immunity and against state law claims should be denied.

Injunctive Relief.

Defendants argument in part IV of their motion asserting Rooker Feldman is misplaced.

Plaintiff contends that these case do not bar injunctive relief. Wherefore he prays this court will deem it necessary to enjoin the courts from delaying and interfering and prejudicing his rights to redress grievance, access to court and due process.

The clear absence of Personal Jurisdiction

Defendants argument in parts V-IX are groundless and should be denied.

Although plaintiff did not sue the defendants in their personal capacity his suit can be taken as raising claims against them in their personal capacity. See Hafer v. Melo 502 U.S. ___ . 112 S.Ct. 358. 364-65 (1991) Scheuer v. Rhodes 416 U.S. 232. 238. 94 S.Ct. 1683 (1974). Farrid v. Smith 850 F. 2d 917 921 (2 Cir. 1988).

The Supreme Court acknowledged in *Stump v. Sparkman* that judge Stump may have committed "grave procedural errors" 435 U.S. at 359. 98 S.Ct. at 1106 it did not explicitly consider whether he acted in the clear absence of personal jurisdiction or whether such action would be protected by judicial immunity. The question herein should appear to be one of first impression.

A court that arguably has subject matter jurisdiction does not act in the "clear absence of all jurisdiction". When the Supreme Court first formulated the "clear absence" standard, however, it stated that the principle of immunity applied when there was jurisdiction of both subject and person. *Bradley v. Fisher* 80 U.S. (Wall) 335. 352 (1972) 20 L.Ed. 646.

An absence of personal jurisdiction may be said to destroy "all jurisdiction" because the requirements of subject matter and personal jurisdiction are conjunctional. Both must be met before a court has authority to adjudicate the rights of parties to a dispute.

IF a court lacks jurisdiction over a party, then it lacks "all jurisdiction to adjudicate that party's rights, whether or not the subject matter is properly before it. See e.g. Kulko v. Superior Court 436 U.S. 84 91, 98 S. Ct 1690, 1696, 56 L. Ed. 2d 132 (1978) (It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant) (citation omitted). In re Wellman, Kan App. 100 45 P. 726, 727 (1896) (ex parte guardianship would be a flagrant violation of due process rendering any order null and void).

Because the limits of personal jurisdiction constrains judicial authority. Acts taken in the absence of personal jurisdiction do not fall within scope of legitimate decisionmaking that judicial immunity is designed to protect See Gregory v. Thompson 500 F. 2d at 63. Therefore the judges herein act in clear absence of personal jurisdiction and forfieted their judicial immunity.

When a judge knows that he lacks jurisdiction or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction. judicial immunity is lost. See Bradley v. Fisher 80 U.S. (13 Wall) at 351. ("When the want of jurisdiction is known to the judge no excuse is permissible"). Turner v. Raynes. 611 F. 2d 92, 95 (5th Cir. 1980). (Stamp is consistent with the view that "a clearly inordinate excessive of unconferred jurisdiction by a judge - one so cross as to establish that he embarked an it either knowingly or recklessly - subjects him to personal liability).

Since this complaint draws an a persistent conspiracy among the court system the mere fact that the judge's knew their misconduct would have future consequences in delaying justice, they can be held liable for compensatory punitive and prospective relief. Slavin supra.

Personal Jurisdiction

The criteria for exercising personal jurisdiction is limited by the principle that it is essential that there be some act by which "they purposefully availed themselves of the priveledge of conducting activities with the District of Colombia. thus invoking the benefits and protections of its laws". See Kulko v. California Superior Court 436 U.S. 84. 56 L.Ed. 2d 132. 98 S.Ct. 1690 rehearing denied 57 L.Ed. 2d 1130. 98 S.Ct. 3127(1978).

In this case. the defendants do not argue against personal jurisdiction by this court as being unjustifiable burdensome or inconvenient. Nevertheless, the constitutional standard for determining whether the District of Colombia may enter a binding judgment against defendants is that set forth in the Supreme Courts opinion in International Shoe Co. v. Washington 326 U.S. 310. 316. 90 L.Ed 95. 66 S.Ct. 154. 161 ALR 1057 (1945). that a defendant "have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice. 326 U.S. at. 316. 90 L.Ed 95 66 S.Ct. 154. 161 ALR 1057 quoting Milliken v. Meyer. 311 U.S. 457. 463-464 83 L.Ed. 278. 61 S.Ct. 339. 132 ALR 1357(1940).

While the interests of the forum state" and of the plaintiff in proceeding with the cause in the plaintiff forum of choice are. of course to be considered. See McGee v. International Life Ins. C.. 355 U.S. 220. 223. 2 L.Ed. 2d 223. 78 S.Ct. 199(1957) an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and fair to require him to conduct his defense in that state. International Shoe Co. v. Washington. supra at 316-317. 319. 90 L.Ed.95 66 S.Ct. 154. 161 ALR 1057 accord Shaffer v. Heitner 433 U.S.186. 198-200. 53 L.Ed. 2d 683. 97 S.Ct. 2569(1977) Perkins v. Benguet Mining Co 342 U.S. 437. 445. 96 L.Ed 485. 72 S.Ct. 413. 47 Ohio. Oos. 216. 63 Ohio L.Abs.(4th Cir 1952)

WhereFore plaintiff prays that this court will consider in the interest of justice, to allow his suit to proceed in the District of Columbia because he cannot trust that the courts in Louisiana will be fair especially since they are the ones being sued.

## Qualified immunity

In part X of defendants Motion to Dismiss they argue their entitlement to qualified immunity because their actions were taken in their absolute or judicial capacity.

Executive and judicial officials are entitled only to qualified immunity for constitutional violations. See Scheuer v. Rhodes 416 U.S. 232 94 S.C.t 1683, 40 L.Ed.2d 90 (1974). Plaintiff has alleged in his complaint sufficient constitutional violations that warrants a trial by jury, and the defendant have surrendered their qualified immunities

In the present case defendants prevented plaintiff from pursuing a viable constitutional violation out of hostility and prejudice. He is entitled by privilege to file Post Conviction Relief and Habeas Corpus as a product of procedural due process. Likewise he has a substantive due process right to Liberty that these two mechanisms afford. Yet once defendants created a shield to keep his case from being heard they lost their immunity for what they knew was a constitutional violation. See Harlow v. Fitzgerald 102 S.C.t 2727 (1982).

WhereFore the defendants by forfeiting their discretion to do what the Law requires of them, their acts and ommissions cannot be said to have been done in good Faith. So for these reasons their motion should be denied.

The Pardon Board

The defendants argue that the Pardon Board members are entitled to absolute immunity and cannot be sued.

Pardon Board members are liable to damages and equitable relief and can be sued under 1983 for knowingly continuing a conspiracy but failed to intervene. Furthermore the Pardon Board allegedly conducted a hearing on plaintiff's clemency request and had evidence of his innocence before them but still failed to take action, and its doubtful they actually heard his case. So in Richey v. Hunter 467 So 2d 427 (1st Cir 1981) the court held; "To determine if due process requires a hearing, court must consider the nature of the interest at stake rather than the weight the person asserting the interest must have legitimate claim of entitlement, rather than an abstract need or desire).

The Louisiana Pardon Board rules creates a liberty interest in providing a hearing on a application for clemency. Due process requires no more than an oppurtunity to be heard and notification of pardons boards reasons for denying clemency. This does not mean that they should pretend as though they heard it to say due process was satified. See Board of Allens 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987) (A protected liberty interest may be created by statute, adminiinstrative regulations or published prison policy rules and regulations) id. The statute or regulation must use specific mandatory Language. See Bermudez v. Duenas. 936 F. 2d 1064 (9th Cir 1991).

22.

The Louisiana Board of Pardons rules found in
P  rule 3(D) states: "In any matter not specifically covered by
LAC 22: V Chapter 1, the board shall have discretionary power to act."

In Louisiana there is no Pardon Board rule established
to give the Board power to act on a clemency request when the applicant
is claiming legal innocence on the grounds of insufficiency of evidence. Yet
the board had power to create a rule designed to serve that purpose under
the circumstances but refused to do so. They recognized a constitutional
violation and knew of plaintiff's innocence by reading the record the first
time but refused to act. Although they cannot be sued for failure to excercise
their duty, they can be sued for knowing a conspiracy existed and failed to
intervene, pursuant to § 1986, they do not enjoy derivative immunity.

For these reason the Court should find defendant's aren't entitled
to qualified or derivative immunity and their motion dismissed.

Respectfully submitted,

Vincent Simmons #85188
Camp-C-Jaguar 1-R-11
Louisiana State Prison
Angola, La. 70712

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been mailed to defendants attorney and Honorable Nancy Mayer Whittington. Clerk of Court. District of Colombia 333 Constitution Ave. N.W. Washington D.C. 20001 by U.S. mail postage prepaid this _____ day of _____ August 2007.

s/ Vincent Simmons    #85188

Vincent Simmons #85188

prepared by: _____ #320441